CHRYSLER WORKERS
ASSOCIATION, et al.,
Plaintiffs–Appellants,

v.

CHRYSLER CORPORATION; Interna-
tional Union, United Automobile, Aero-
space & Agricultural Implement Work-
ers of America—UAW Locals # 371,
# 1331, # 1435, # 2075 & # 2147, Defend-
ants–Appellees.

No. 86–3361.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1987.

Decided Nov. 25, 1987.

Rehearing and Rehearing En Banc
Denied Jan. 19, 1988.

Dennis P. Strong, argued, Michael N.
Vaporis, Bayford, Senerius, Vaporis &
Strong, Toledo, Ohio, for plaintiffs-appel-
lants.

Thomas L. Dalrymple, argued, Charles
R. Leech, Jr., Fuller & Henry, Joan Tor-
zewski, Gerald B. Lackey, John G. Matti-
moe, Toledo, Ohio, Jordan Rossen, Leonard
Page, argued, Detroit, Mich., for defend-
ants-appellees.

Before MARTIN, WELLFORD and
NELSON, Circuit Judges.

WELLFORD, Circuit Judge.

The individual plaintiffs are now employ-
ees at the General Dynamics Land Sys-
tems, Inc. (GDLS), Lima, Ohio, tank manu-
facturing plant. Formerly, they worked
for Chrysler Defense, Inc. (a wholly owned
subsidiary of Chrysler formed to manufac-
ture defense products rather than automo-
biles). This is an appeal from the district
court's order granting summary judgment
to the defendants, Chrysler, the United
Automobile, Aerospace, and Agricultural
Implement Workers of America Interna-
tional Union (UAW), several UAW locals,

and GDLS. The suit stems from the plaintiffs' attempts to return to their "home" plants, in which they were employed before transferring to the Lima, Ohio, tank plant pursuant to a work opportunity provision in their collective bargaining agreement (CBA) with Chrysler. The plaintiffs claim that UAW violated its duty of fairly representing them and pursuing their grievances. They claim Chrysler breached the CBA by not transferring them back to their "home" plants. (Plaintiff Chrysler Workers Association is simply an organization formed by individual plaintiffs to advance their interests.)

We consider first whether the district court erred by holding that the defendants are entitled to summary judgment because the plaintiffs' causes of action were barred by the applicable six month statute of limitations.

During an economic recession Chrysler indefinitely laid off thousands of workers at Chrysler plants, including, in 1981 and 1982, these plaintiffs who worked in Perrysburg, Ohio, Van Wert, Ohio, and New Castle, Indiana (hereafter referred to as "home" plants). Chrysler Defense, Inc., on the other hand, was then expanding, so, under the provisions of a CBA between Chrysler and the UAW and all its locals, the plaintiffs took advantage of an opportunity to transfer to the Lima, Ohio tank manufacturing plant operated by Chrysler Defense, Inc. This work opportunity provision of the CBA (# 65) afforded the transferring employees an opportunity to return to their home plants under certain conditions.[1] The plaintiffs could also return to their home plants in two other ways: (1) under the provisions of the "Ohio Letter," a subsequent agreement modifying the CBA, which provided that plaintiffs could opt to return if their home plants hired new employees and if the return did not adversely affect either plant's operations, or (2) under the provisions of the so-called "Sadie Hawkins Day" term, a special provision whereby, once each year on a selected date, work opportunity employees, such as plaintiffs, who are not indefinitely laid off from the work opportunity plant, were afforded an opportunity to sign up to return to their home plant (but only in a situation where the home plant would have otherwise hired a new employee, and provided such transfer would "not affect adversely the efficiency of the operations at the plant or plants involved").

Since none of the plaintiffs were indefinitely laid off from the GDLS tank plant, their conditional opportunity to return to their home plants was limited to the Ohio Letter or the "Sadie Hawkins Day" terms. Plaintiffs attempted to exercise a transfer option under these two provisions, but Chrysler did not permit transfer.[2] The plaintiffs want this return for two reasons: to retain their old Chrysler seniority, and

1. **(65) WORK OPPORTUNITY FOR LAID OFF EMPLOYEES** (in pertinent part)

 The plant agrees that in employing new people in any department it will give *work opportunity to qualified laid off employees* in the following order:

 ....

 Employees accepting work under this Subsection (b) *shall have no right to return to former plants unless and until they are permanently laid off from the new plant.* When so laid off they shall elect to (i) retain seniority at the new plant and in such case their seniority at their former plants shall terminate or (ii) return to their former plant with full accumulated seniority and in such case their seniority at all other plants shall terminate. (Emphasis added).

2. The Ohio letter of understanding pertained to Chrysler workers laid off at the Perrysburg,

Ohio facility. Since plaintiffs were subject to this supplemental agreement, others, who worked at the Van Wert, Ohio plant, and the New Castle, Indiana plant are not seeking transfer back to these plants under the Ohio agreement, which is described in plaintiffs' brief at pp. 3–5 as having "modified Article 65 of the 1979 agreement (for those employees transferred to plants more than 50 miles from their home plant) ... and operated only with respect to transfers from home plants to other plants within fifty miles." Van Wert employees attempted to return to their home plants under the Sadie Hawkins Day agreement. It is uncertain on what basis New Castle employees sought transfer. Plaintiffs in their brief assert at pages 5 and 24 that New Castle employees did not transfer to the Lima tank plant under the work opportunity provision, § 65 of the 1979 CBA; rather, they "hired in off the street as new employees."

because these plants are closer to their homes than the Lima tank plant.

In early 1982, Chrysler planned to sell its defense industry operations. The UAW learned that General Dynamics Corporation (GD) would buy Chrysler Defense, Inc., so it began negotiations with GD. The parties essentially agreed, by March of 1982, that GD would abide by the 1979 Chrysler–UAW CBA terms until the existing CBA termination date of September 14, 1982. Chrysler Defense, Inc., after being sold to GD, was renamed GDLS. Plaintiffs became employees of GDLS, not Chrysler, since Chrysler no longer had any connection with the Lima tank plant. The statute of limitations dispute revolves about the question whether and when plaintiffs were notified, or put on notice, that the sale affected their recall rights to Chrysler. Apparently, however, both corporate and Union officials had some question about the plaintiffs' status at the time; as a consequence, two "letters of understanding" or "letter agreements" were issued.

The first letter agreement from GD to the UAW was dated May 18, 1982. Marc Stepp, Vice President of the UAW, "accepted" this letter.[3] The second letter to the UAW, dated June 7, 1982, was from Chrysler Corporation, and the same UAW official "accepted" this letter. The latter states Chrysler's understanding of the plaintiffs' rights to return to their home Chrysler plants, and the UAW's agreement thereto:

1. An employee of CDI (now GDLS) who would otherwise qualify for the right to return to a Chrysler Corporation plant based on Section 54(c) or Section 65(b) of the applicable Chrysler–UAW agreements, may exercise the opportunity to return to his former plant *if indefinitely laid off by GDLS according to the provisions of said agreements, on or before September 14, 1982.* Unless indefinitely laid off by that date, any such employee shall lose any right to return to Chrysler. (Emphasis added).

Twice in July of 1982 the UAW held a meeting to explain to Union members the effect of the Chrysler sale to GD. The plaintiffs allege that "no mention was made of" the May and June 1982 letters of understanding and that "no one informed the Plaintiffs that their seniority rights at their home plants or their ability to return to their home plants had been in any way altered as a result of the sale."[4] Local Union president, Darrell Cole, testified that he did not recall telling the Union members about the letter agreements or that their recall rights would terminate on September 14, 1982, nor did he recall any other Union representative explaining this to the Union workers. Stepp testified that he "doubted very much" that the June 7, 1982, letter agreement "was reproduced and sent to the members", and that, as far as he knew, the letter agreements were never furnished to the plaintiffs.[5] Homer Jolly, a UAW Chrysler Department official, testified that he did not know if the letter agreements were ever given to the plaintiffs or posted for them to see. Jolly did testify that he discussed their recall rights with the plaintiffs, but this, again, is a source of controversy.

In September of 1982, the UAW again held a meeting, this time to inform the membership of the terms and conditions of a proposed new CBA between the UAW and GDLS. The plaintiffs assert that they were not then told about the effect on their

---

**3.** This letter dealt with former GDLS employees returning to the Lima plant and is not at issue.

**4.** In their reply brief at p. 2, it is set out that "[t]he Plaintiffs do not dispute that the letter agreements, secretly entered into by UAW, Chrysler and General Dynamics, appear to extinguish the Plaintiffs' seniority rights on September 14, 1982." These letter agreements specifically refer to extinguishment of *transfer privileges* to home plants by September 14, 1982.

**5.** Stepp also testified about two undated letters drafted at his direction, one to Chrysler workers contemplating a return to the Lima GDLS plant and one to GDLS workers contemplating a return to Chrysler plants. While the letters, drafted after the May and June 1982, letter agreements, did not mention the letter agreements or the terms thereof, they purported to explain the benefits and/or drawbacks of transferring back to the former plants. There is also a dispute about whether plaintiffs saw, or received, these undated letters.

opportunity to return to their Chrysler home plants. Jolly stated that no Chrysler worker ever asked about returning or was told that he could return to his home plant. Plaintiffs' affidavits do not dispute this testimony. They simply assert that plaintiffs did not know that Chrysler and the Union considered their opportunity to return to "home" plants then to be at an end.

The UAW and GDLS bargained for a new CBA after September 14, 1982, and within two weeks UAW and GDLS agreed to a new CBA, to expire September 14, 1985. The new CBA had no provisions relating to Chrysler or former Chrysler employees, and the membership, including the plaintiffs, ratified the new CBA.

Whether the 1979 CBA expired on September 14, 1982, is contested. The termination provision, section (119), states that the 1979 CBA remains in effect until September 14, 1982, but may renew from year to year thereafter unless either party gives notice to "modify, amend or terminate" the agreement sixty days before the termination date. There is no evidence that either party gave the notice. The parties agreed to "change" section (119) of the 1979 CBA on September 5, 1983 (one year later). Some witnesses "assumed" termination or amendment of the 1979 CBA had occurred. The question of the September 14, 1982, termination is involved in the statute of limitations issue.

On the other hand, that the 1979 CBA terms expired on September 14, 1982, as between the UAW and GDLS, cannot seriously be questioned. On March 11, 1982, GDLS agreed to follow the terms of the 1979 CBA between Chrysler and the UAW only until September 14, 1982. Clearly, after September 14, 1982, GDLS was not bound by the 1979 CBA. After a short strike and subsequent negotiations, a UAW–GDLS CBA effective September 27, 1982, was executed.

There is no dispute but that Chrysler and the UAW twice amended the 1979 CBA, once on December 10, 1982, and again on September 5, 1983. By September 14, 1982, none of the plaintiffs had been indefi-nitely laid off by GDLS. The district court determined that:

> Sometime subsequent to the aforesaid sale of Chrysler Defense, Inc. to General Dynamics, Chrysler, due to improved economic factors, began to expand its work force at certain of its plants, after which time plaintiffs sought to return from GDLS's Lima tank plant to their "home" Chrysler plants. Such attempts of plaintiffs were unsuccessful. In 1983 and 1984, several GDLS employees filed or sought to file grievances with respect to a perceived refusal to allow said employees to return to their "home" Chrysler plants. The Union did not process those grievances that were actually filed, nor would it file any grievance with respect to the "home" plant transfer issue. No GDLS employee at the Lima tank plant was indefinitely laid off between March, 1982 and September 14, 1982. As of March 23, 1984, the date this lawsuit was commenced, plaintiffs had not been separated from GDLS; rather, they continue to be employed by GDLS at the Lima, Ohio tank plant.

On November 11, 1983, the UAW sent letters to the plaintiffs unequivocally denying their grievances about not permitting home plant transfers. The plaintiffs, unable to get the UAW to process their grievances about their right to return to their home plants, formed the Chrysler Workers Association and filed suit on March 23, 1984. On April 27, 1986, after discovery and numerous motions, the district court granted summary judgment to all defendants on the basis of the statute of limitations:

> Applying the standards for accrual to the undisputed facts of this case establishes that plaintiffs [sic] hybrid § 301/fair representation claim accrued no later than December 10, 1982, the date of the 1982 national and local agreement between the Union and Chrysler. Said 1982 agreement did not renew the May 18, 1982 and June 7, 1982 letters of understanding, nor did it apply to plaintiffs UAW Local Union 2075, nor did it provide for either intercorporation or cross-national bargaining unit work op-

portunity transfers. By July, 1982 plaintiffs knew or reasonably should have know [sic] that their subject Chrysler "home plant recall/seniority rights["] would terminate September 14, 1982. By September 14, 1982, plaintiffs knew or reasonably should have known that the October 25, 1979 agreement between Chrysler and the UAW expired by its express terms. Further, by September 14, 1982, plaintiffs knew or reasonably should have known that the express prerequisite for returning to their "home" Chrysler plants with seniority had not occurred, to wit, being indefinitely laid off by GDLS before September 14, 1982. By September 27, 1982, plaintiffs knew or reasonably should have known that the 1982 collective bargaining agreement between the UAW and GDLS covered plaintiffs' UAW Local Union 2075, said 1982 agreement did not renew or extend the May 18, 1982 or the June 7, 1982 letters of understanding, and that said 1982 agreement did not provide for inter-corporation or cross-national bargaining unit work opportunity transfers.

By December, 1982 subsequent to ratification of the December 10, 1982 agreement between the UAW and Chrysler, plaintiffs knew or reasonably should have known that the Lima, Ohio tank plant UAW Local Union 2075 was not covered by said agreement, that the aforesaid letters of understanding were not renewed by said 1982 agreement, and that said 1982 agreement did not provide for inter-corporation or cross-national bargaining unit work opportunity transfer. In sum, the Court finds that plaintiffs' hybrid § 301 fair representation claim accrued no later than December 10, 1982 by which time plaintiffs discovered or in the exercise of reasonable diligence should have discovered the acts constituting either the alleged violation of the abrogation of their Chrysler "home" plant recall/seniority rights or the fact of defendants' agreement that plaintiffs' said "home" plant recall/seniority rights would terminate on September 14, 1982. Plaintiffs discovered or in the exercise of reasonable diligence should have discovered that their Chrysler "home" plant recall/seniority rights were impaired or, as alleged, abrogated by the actions of defendants (the gravamen of their complaint), as early as July, 1982, and no later than the dates of ultimate ratification of the respective 1982 agreements between the UAW and GDLS and between the UAW and Chrysler. Finally, plaintiffs [sic] cause of action for the Union's violation of § 101 of the LMDRA, 29 U.S.C. § 411, for failure to permit plaintiffs to ratify both the aforesaid letters of understanding and the March 16, 1982 agreement between GDLS and the UAW accrued no later than July, 1982.

The court also found that the statute of limitations had not been tolled.

The district court dismissed GDLS,[6] granted summary judgment on the statute of limitations defense to both Chrysler and the UAW, and struck plaintiffs' jury demand. In a previous order, dated September 25, 1985, the district court denied plaintiffs' request for leave to file another amended complaint and refused to compel further discovery. (Plaintiff sought three interrogatory answers from Chrysler and a more complete answer to another of its interrogatories.)

The plaintiffs' claims [7] arise essentially under § 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185,[8] and from § 9(a) of the National

---

6. No objection was made as to dismissing GDLS. GD has also been dismissed as a party defendant.

7. The plaintiffs' amended complaint alleges breach of the CBA by the employer, breach of the union's duty of fair representation, violation of the union's constitution and bylaws, and misrepresentation. They seek monetary damages, a declaration of their rights, injunctive relief, and punitive damages.

8. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, with-

Labor Relations Act (NLRA), 29 U.S.C. § 159(a).[9] There is a judicially implied duty of fair representation under these statutes. *See, e.g., International Brotherhood of Elec. Workers v. Foust,* 442 U.S. 42, 46 n. 8, 99 S.Ct. 2121, 2125 n. 8, 60 L.Ed.2d 698 (1979).

■ This type of suit against an employer and union is known as a hybrid § 301/unfair representation action. *E.g., DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A six month limitations period, as established in § 10(b) of the NLRA, applies to suits of this type. *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294. Since this action was pending when *DelCostello* was decided on June 8, 1983, the six month statute governs these claims. *Smith v. General Motors Corp.,* 747 F.2d 372, 375 (6th Cir.1984) (en banc); *McCreedy v. Local Union # 971,* 809 F.2d 1232, 1236 (6th Cir.1987). The plaintiffs' causes of action are accordingly time barred if they accrued prior to September 23, 1983. Hybrid § 301/fair representation claims accrue when employees discover, or should have discovered with the exercise of reasonable diligence, the acts constituting the alleged violations. *See Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.1985) (per curiam) (stating the "cause of action accrue[d] by operation of the collective bargaining agreement") and *Former Frigidaire Employees Association v. International Union of Elec., Radio & Machine Workers, Local 801,* 573 F.Supp. 59, 61–62 (S.D. Ohio 1983), *aff'd sub nom., Adkins v. International Union of Elec., Radio & Machine Workers,* 769 F.2d 330 (6th Cir.

1985). The question in this case involves an application of this rule to the facts of this dispute and whether the district court could have decided that the plaintiffs knew or should have known of the facts giving rise to their claims before September 23, 1983. *DelCostello,* 462 U.S. at 171–72, 103 S.Ct. at 2294–95.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge,.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes [v. S.H. Kress & Co.],* 398 U.S. [144], at 158–59 [90 S.Ct. 1598, at 1609, 26 L.Ed.2d 142] [1970]....

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). At the same time, only disputes over material facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 2510.

The plaintiffs argue that their recall rights did not expire upon the September 14, 1982, purported termination of the 1979 CBA. Since they claim that the 1979 CBA remained in effect, they assert also that they remained laid-off employees of Chrysler, temporarily working for another company, and that their recall rights did not terminate. Plaintiffs further argue that the district court ignored their affidavits stating that they did not know their recall rights were extinguished until the union

---

out respect to the amount in controversy or without regard to the citizenship of the parties.

LMRA § 301, 29 U.S.C.A. § 185(a) (1978).

9. (a) Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employ-

ment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

NLRA § 9(a), 29 U.S.C.A. § 159(a) (1973).

refused to process their grievances beginning in late 1983.

The date of accrual or implied knowledge of plaintiffs is a material issue. In determining whether there is a genuine dispute of fact precluding proper entry of summary judgment for defendants, we look at facts that point to six possible times at which the plaintiffs knew or should have known of the accrual of their claims: (1) in May and June of 1982 when their bargaining representative, the UAW, received the GDLS and Chrysler letter agreements; (2) in July and September of 1982 during the course of three local UAW membership meetings; (3) on September 14, 1982, when the UAW–Chrysler 1979 CBA purportedly terminated; (4) on September 27, 1982, when the UAW–GDLS CBA became effective; (5) on December 10, 1982, or September 5, 1983, when the UAW–Chrysler 1979 CBA was amended; or (6) on November 11, 1983, when the plaintiffs received the UAW's letters telling them about the letter agreements and refusing to process their grievances. Only if there is a sufficient and a reasonable basis to support a jury verdict that the last of these dates is the accrual date, should we set aside the judgment of the district court, because the asserted actual knowledge of plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning accrual of their right to sue.

The district court mentioned that the plaintiffs' causes of action may have accrued when the May and June 1982 letter agreements were written and delivered to the Union. There is no firm undisputed evidence that these plaintiffs, who are now suing the UAW for the UAW's alleged unfair representation of them, were ever specifically told by the UAW about these letters until November of 1983, when the UAW refused to process grievances on the issue. The plaintiffs have sworn that they did not actually know about the letter agreements. Union witnesses do not specifically contradict this, but Chrysler had every reason to believe its position was made known, and that, in the absence of a prompt complaint or grievance, its position

was unchallenged by Union officials or by Union members. Chrysler had, in short, a firm agreement terminating transfer privileges by September 14, 1982.

The court also found it undisputed that: "In July of 1982, the Union had two meetings ... at which, *inter alia,* the May 18, 1982 and June 7, 1982 letters of understanding were read to said membership." The court also indicated that plaintiffs were told of the termination of their recall rights at the September, 1982, ratification meeting. Neither conclusion is undisputed on this record. It is questioned by plaintiffs that the May and June 1982 letters were ever discussed with the plaintiffs during the 1982 meetings. It is disputed whether plaintiffs actually knew at the July or September 1982 UAW meetings that their recall rights were affected by the sale of the Lima plant to GD, and that their Union had agreed that the opportunity to transfer back to a home plant terminated September 14, 1982.

The district court also concluded that "[b]y September 14, 1982, plaintiffs knew or reasonably should have known that the October 25, 1979 agreement between Chrysler and the UAW expired by its express terms" and that their recall rights had ceased. Whether the 1979 CBA expired on September 14, 1982, is questioned by plaintiffs. The termination clause in the CBA provides for renewal of the CBA from year to year unless a specific termination procedure is utilized. It is not clear whether this procedure was followed.

The district court indicated that the plaintiffs' cause of action accrued by September 27, 1982, the date of the new UAW–GDLS CBA. Since the GDLS's local UAW membership ratified the UAW–GDLS CBA, and plaintiffs were a part of this process, it seems fair to conclude that the plaintiffs, by exercising reasonable diligence, might well have known that their recall rights back to Chrysler plants were in doubt, especially since the UAW–GDLS CBA contained no provision related to recall to a Chrysler plant and there was no inclusion of the plaintiffs' former locals (at Chrysler plants) on the list of parties bound by this

CBA with GDLS. Further, by then plaintiffs were on notice that the Chrysler Defense plant sale to GD would, or at least might, have affected their recall rights. They knew that they were no longer considered Chrysler employees at least under the new GDLS agreement. The new CBA between GDLS and UAW contained no provisions similar to the "Ohio letter" agreement or the "Sadie Hawkins Day" agreement.

As Chrysler points out, moreover, there is indication that at least some of the plaintiffs, on roughly March 8, 1983, questioned their ability to return to their home plants, as some of them asked the UAW and GDLS about being recalled to Chrysler. GDLS gave them no assurance but told them to contact the local UAW; the local UAW allegedly refused to respond to plaintiffs' inquiries. A reasonable conclusion might be drawn that the plaintiffs failed to exercise due diligence in not finding out what their rights were either before or shortly after the new September 27, 1982, UAW–GDLS CBA, especially if the plaintiffs knew by early 1983 that the Union would not respond to their requests concerning the opportunity to transfer back to Chrysler which was no longer their employer. Whether this is a sufficient basis for awarding defendants summary judgment on accrual of a cause of action, however, may be questionable.

The UAW and Chrysler renegotiated a national CBA on December 10, 1982, as amended September 5, 1983. There is no doubt but that on December 10, 1982, and September 5, 1983, the plaintiffs were employed by GDLS, not Chrysler, and they worked at the GDLS plant. Even if defendants had any continuing duty to plaintiffs (as alleged Chrysler employees in a lay-off status), plaintiffs must be deemed to have notice of these agreements and their implementation.

Plaintiffs argue that the 1982 letter agreements were not intended to alter the 1979 CBA. They did, however, clearly terminate any transfer right from the Lima GDLS plant to a Chrysler home plant by September 14, 1982. The latter agreements were signed by responsible officials of Chrysler, GD, and the UAW and referred specifically to the changed circumstance of the sale of Chrysler Defense, Inc., later known as GDLS, to GD and establishment of "separate bargaining units and labor agreements." Plaintiffs were aware no later than September of 1982 that they were employees of GDLS and that there was a *separate UAW–GDLS labor agreement* covering their employment and that there were *separate bargaining units* governing Chrysler plants and the GDLS plant. They also knew that there was no reference in their separate GDLS CBA to a Chrysler local union or any transfer right back to Chrysler home plants.

Plaintiffs also knew that they had not, prior to September 14, 1982, been indefinitely laid off by GDLS. Under terms of the Chrysler CBA, then, and the terms of the supplemental letter agreements, there was no basis in law for a transfer back to Chrysler home plants. New Castle plaintiffs assert (at page 24 of their brief) that "they were not required to wait until the New Castle Chrysler facility recalled all its laid-off workers and began hiring off the street," citing the decision of the Public Review Board which finally rejected the Gaw grievance on August 30, 1985. New Castle plaintiffs asserted that their rights of transfer accrued when "they were passed over for recall at their home plants." (Plaintiffs' brief at 24). Their brief, moreover, asserts that "Joe Gaw [a New Castle plaintiff] and the New Castle, Indiana Chrysler workers had been passed over for recall prior to July, 1982." *Id.* at 24. New Castle plaintiffs further assert that they "immediately filed grievances," which were rejected, *id.* at 24, and thus they claim Chrysler then violated the CBA by July of 1982 as to New Castle plaintiffs. This contention has no merit insofar as Chrysler is concerned.

The district court, citing *Vallone v. Teamsters, Local 705*, 755 F.2d 520 (7th Cir.1984), held that the filing of the grievance by Gaw did not toll the statute of limitations. Neither Chrysler nor the UAW recognized the New Castle plaintiffs'

grievance, and it was clear after September 14, 1982, that neither party defendant, claimed by plaintiffs to be responsible to them, recognized a recall right to the New Castle, Indiana Chrysler plant at any time less than six months before this suit was filed. As stated by the district court:

A hybrid § 301/fair representation claim accrues and the applicable statute of limitations begins to run when the claimant knows or reasonably should have known of the union's alleged breach of its duty of fair representation. *Dowty v. Pioneer Rural Electric Cooperation, Inc.,* 770 F.2d 52, 56 (6th Cir.1985), *cert. denied* [474 U.S. 1021], 106 S.Ct. 572 [88 L.Ed.2d 557] (1985).

"A claim accrues under section 10(b) [of the NLRA, 29 U.S.C. § 160(b)] when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Adkins,* 769 F.2d at 335, *citing, Shapiro v. Cook United,* 762 F.2d 49, 51 (6th Cir.1985) *(per curiam); Howard v. Lockheed–Georgia Co.,* 742 F.2d 612, 614 (11th Cir.1984) *(per curiam); Metz v. Tootsie Roll Industries,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* 464 U.S. 1070 [104 S.Ct. 976, 79 L.Ed.2d 214] (1984).

The district court was not in error, then, in concluding that the New Castle plaintiffs are barred by the statute of limitations in their claim against Chrysler. Plaintiffs concede that if the court holds the 1979 agreement home plant transfer privileges were terminated on September 14, 1982, "then the Plaintiffs' causes of action cannot be based on a breach of a collective bargaining agreement." (Plaintiffs' brief at 32.)

Insofar as any plaintiff claims damages against Chrysler under the "Sadie Hawkins Day" agreement, it should be noted that this agreement (relied on by Van Wert plaintiffs), expressly provides that "the corporation shall not incur any liability for claimed violations or errors in the administration of this [Sadie Hawkins] Memoran-

dum of Understanding." Whether or not the statute of limitations constitutes a bar to a claim under this agreement, the above language eliminating liability against Chrysler would preclude a claim thereunder; moreover, the language further specifies that the Sadie Hawkins understanding "shall not take precedence over the terms and provisions of other understandings and agreements."

 As to defendant Chrysler, we are not prepared to affirm the district court's conclusion that the six months statute of limitation barred plaintiffs' claims in all respects. We find another basis, however, for affirming the judgment for defendant Chrysler—the plaintiffs' concession that there is no cause of action:

The Plaintiffs would only reiterate that if in fact this Court finds that the Plaintiffs' recall/seniority rights were eliminated in 1982 either because of the secret May and June, 1982 letter agreements or as a matter of law because of the alleged expiration of the 1979 Agreement, the Plaintiffs have no cause of action whatsoever against Chrysler Corporation for breach of contract.

Plaintiffs' Reply Brief at 11.

We conclude, under all the circumstances, that the district court reached a correct result in rendering a judgment for Chrysler. We base this conclusion upon the terms of the 1979 CBA and the letter agreement of June 7, 1982, and the undisputed fact that none of the plaintiffs had been laid off by GDLS on or before September 14, 1982.[10] Whether or not plaintiffs knew by September 14, 1982, of the terms of the preceding June letter agreement, it was a valid, reasonable and binding agreement entered into by Chrysler and the plaintiffs' collective bargaining representative limiting "interplant transfers" and precluding "inter-company transfers." In the context of the economic conditions then faced by Chrysler and the sale of its defense unit to a new and unrelated employer in early 1982, we find the arrangement worked out by UAW with Chrysler

---

**10.** The June 7, 1982 letter agreement sets out specifically that "unless indefinitely laid off by that date, any such employee shall lose any right to return to Chrysler."

and with GD, the purchaser of the Lima plant, as a matter of law to constitute neither a conspiracy nor a fraud operating against the interests of former Chrysler employees. Shortly after the letter agreement the Union put plaintiffs and other "work opportunity employees" who had transferred to the Lima plant on notice of a meeting to be attended by international Union representatives in July of 1982 to "explain the agreement and to answer questions." Plaintiffs undeniably had the opportunity to ask the Union about their status as GDLS employees. There was no "affirmative" act of concealment.

The Union, which is the collective bargaining representative of plaintiffs, is not required as a matter of law to submit the type of letter agreement here involved to the membership for ratification. *Cleveland Orchestra Committee v. Cleveland Federation of Musicians, Local #4*, 303 F.2d 229 (6th Cir.1962). *See Oddie v. Ross Gear & Tool Co.*, 305 F.2d 143, 149 (6th Cir.), *cert. denied*, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed.2d 1048 (1953). Unions under the NLRA have broad authority to engage in binding collective bargaining with respect to "pay, ... hours of employment, or other conditions of employment." 29 U.S.C. §§ 157, 159. Whether the Union constitution or by-laws may require this submission of an agreement to its members for approval is another matter. In any event, we find that Chrysler had a right to rely upon its agreement with the Union absent clear notice that the Union was acting in bad faith against the interests of its members. There is no such indication here.

Our decision to affirm judgment for Chrysler is not based upon the district court's statute of limitations determination. We believe there could be a factual question as to when the plaintiffs were on notice of accrual of their rights to bring an action both for failure to represent and with respect to Chrysler's alleged violation. We have simply determined that the record established that Chrysler did not violate its contractual responsibilities with respect to plaintiffs' claimed transfer rights, and that

neither Chrysler nor the UAW have fraudulently concealed from plaintiffs their asserted causes of action.

We have considered each of the dates when the district court found that plaintiffs' right to sue accrued or may have accrued. Giving plaintiffs' averments and contentions every fair and reasonable construction, we cannot say that there may not have been a genuine dispute concerning material facts as it relates to the accrual date. That plaintiffs did not act as diligently or expeditiously as they might to protect their claimed transfer rights or interests does not warrant a summary judgment for defendants on the basis of the applicable six months statute of limitations. For the reasons stated by the district court, however, we believe it was correct in any event in denying plaintiffs' claim of punitive damages against the defendant unions.

Since the plaintiffs have not prevailed against defendant Chrysler for the reasons heretofore set out, they must be deemed to have failed in this claim for damages against the union. Although we do not find that such a decision is mandated as a matter of law under the statute of limitations defense asserted by defendant unions, we affirm the judgment in their favor because of the peculiar nature of the § 301 claim. Such a claim against the unions is "inextricably interdependent" upon plaintiffs' claim against defendant Chrysler. *DelCostello v. Teamsters Union*, 462 U.S. 151, 164, 165, 103 S.Ct. 2281, 2290, 2291, 76 L.Ed.2d 476 (1983).

" 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.' " *Mitchell, supra*, at 66–67 [101 S.Ct., at 1565–1566] (Stewart, J., concurring in judgment), quoting *Hines, supra*, at 570–71 [96 S.Ct., at 1059]. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straight forward breach-of-contract suit under

§ 301, as was *Hoosier,* but a hybrid § 301/fair representation claim, amounting to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'" *Mitchell, supra,* at 66 [101 S.Ct., at 1565] (Stewart, J., concurring in judgment), quoting *Hoosier,* 383 U.S., at 702 [86 S.Ct., at 1111]. *DelCostello* at 165, 103 S.Ct. at 2291.[11] *See also Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Smith v. Kerrville Bus Co.,* 748 F.2d 1049, 1053 (5th Cir.1984); *Findley v. Jones Motor Freight,* 639 F.2d 953, 957, 958 (3rd Cir.1981).

Accordingly, we AFFIRM the judgment for all defendants.

---

**11.** See also the cases cited in *DelCostello: United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).