852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Randall Lee UNDERWOOD, Plaintiff-Appellant,
v.
NORTH SLOPE PROPERTIES, INC., Defendant-Appellee.
 No. 87-5788.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1988.
 
 Before WELLFORD, DAVID A. NELSON, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 On January 4, 1984 Randall Underwood slipped and fell on the stairs leading up to an oil well located in Greenville, Kentucky; he was later taken to a hospital and treated. The dispute in this case is over whether Underwood was working for defendant North Slope Properties, Inc., (North Slope) when he was injured. North Slope refused to pay Underwood's medical expenses because it maintained that he was not an employee at the time he was injured and therefore not covered by its workmen's compensation or other insurance.
 
 
 2
 Witnesses for the defendant company stated Underwood was terminated in October, 1983, when Russell Richards took over the ownership and operation of the oil well that is the site of the accident at issue. After that time defendant claimed that Underwood worked for Richards until the latter fired him December 31, 1983. North Slope points to the fact that Underwood was neither paid by it nor submitted weekly progress reports to anyone after December 31 as evidence that he was not its employee at the time of the accident. Another witness stated Underwood told him he was collecting his tools when the accident occurred.
 
 
 3
 Underwood, on the other hand, testified he was working for North Slope up until the time he was injured, and was not terminated until he began asking for workmen's compensation in connection with his injury. He challenges North Slope's version of the facts and asserts that there is no business record of his being dismissed. Further, he claims that defendant's position is undercut by the fact that he received paychecks from and submitted reports to North Slope until approximately December 31.
 
 
 4
 Underwood claims wrongful discharge by North Slope for his termination. He also requested relief for emotional distress suffered by not being admitted to the hospital after North Slope denied liability for his medical or hospital bills. The district court granted summary judgment to North Slope on all claims. Finding no material issue of fact in dispute, the court dismissed the emotional distress claim because it concluded that North Slope had no duty to pay Underwood's medical expenses for the accident, and because its justified refusal to pay, without more, could not be considered outrageous conduct under the circumstances. This appeal followed.
 
 
 5
 On appeal, Underwood focuses only on the issue of his claimed employment at the time of the accident, recognizing that this is critical to the success of his claims. The legal question presented is whether the district court appropriately granted summary judgment for the defendant in finding no material issues in dispute. Underwood claims that there was sufficient evidence to support a reasonable factfinder's conclusion in his favor.
 
 
 6
 Underwood summarizes his evidence in his appellate brief:
 
 
 7
 1. He was on the job site on January 4, 1984.
 
 
 8
 2. His paycheck for the period ending December 31, 1983 (his last check) was on a North Slope check.
 
 
 9
 3. All of his weekly gauge reports went to Robert Carter (North Slope's field supervisor) right up to December 31, 1983.
 
 
 10
 4. North Slope does not have any written evidence of any kind to indicate that Underwood was terminated.
 
 
 11
 5. Underwood testified that he worked January first through the fourth.
 
 
 12
 The defendant claims plaintiff was let go on October 15, 1983 when Mr. Carter, the supervisor, told him that Russell Richards was taking over operation of the oil well from North Slope. Underwood was then hired by Richards to do the same work, according to the defendant. After this time, North Slope claimed it did not pay for Underwood's services, except that it paid his wages for the week of December 31 because, allegedly, Richards was then short of capital and asked North Slope to pay Underwood in exchange for a debt it owed to Richards. North Slope's president, Ferrell Kahn, also testified that Underwood told him following the accident that he had been picking up his tools the day he was injured.
 
 
 13
 There is some support for Underwood's version of the facts. Although there is no direct evidence that Underwood was paid for, or submitted progress reports for any time after December 31, he stated that two men were working with him on the oil well the day he was injured. Neither was produced to support either party's version of what happened, but plaintiff's statement that he was still employed on that day contradicts the other evidence and testimony of the defendant. Underwood also claimed that he did not send in his weekly report to North Slope for the first week in January, 1984, because of his injury. Underwood's position is supported by more than his own testimony, however. For example, the district court found that "the last paycheck issued to plaintiff from North Slope, dated January 5, 1984 was for times up to and including December 31, 1983." The existence of this check may well support Underwood's position that he was not hired by Richards in September or October, as North Slope claims.[1] Further support comes from evidence that Underwood continued to fill out and send to the defendant the same meter inspection forms from October to December on the oil well in question, after the time defendant claims he was working for Richards or his company. One such form for December contained a note from Underwood to Robert Carter, a supervisory employee of North Slope, stating: "Bob, its been so cold I am afraid to turn the Plant off to Put on New Meters." Thus there is a factual dispute about whether Underwood continued to be employed by North Slope, or its agent, after October, 1983, and for how long.
 
 
 14
 Underwood did not explicitly assert in his complaint or in his amended complaint that he was suing North Slope for retaliating against him for seeking workers compensation benefits. He sued, rather for (1) North Slope's alleged negligence in permitting an accumulation of snow and ice on steps used by him while "employed by defendants," (2) for its failure to provide him a safe place to work,[2] and, (3) for defendant's failure to comply with the Kentucky law requiring it to carry workers compensation insurance or maintain a self-insured status. An amended complaint asserted that he was "wrongfully discharged from his employment." Whether this later assertion includes a claim of retaliation by implication is not clear. The district court dealt with the wrongful discharge contention but did not mention retaliation as such, holding that Underwood had been an "at will" employee terminable, and terminated, by defendant no later than December 31, 1983, before the accident. The district court held North Slope to be entitled to summary judgment "with regard to plaintiff's claim of wrongful discharge in violation of the public policy established by the workers' compensation statutes" because of the employment issue, and therefore did not specifically address the retaliation question.
 
 
 15
 Underwood testified in response to a question in his deposition that he "figured" that North Slope did not rehire him "because of the fact [he] filed a workers' comp. claim," and he "assumed or it was his thinking" that this was the reason, because defendant did not "take me back." He testified that after his hospitalization he returned to the job site "ready and willing" to work and defendant's supervisor, Carter, said "I ain't got nothing for you to do" in September of 1984. There is nothing reflected in the record that retaliation was raised as an issue before the district court but the question was raised before this court at oral argument. Because the district court did not specifically address this evidence in its dismissal, we need not decide that issue at this juncture.
 
 
 16
 In light of this evidence, we cannot affirm the district court's grant of summary judgment. The standard we must apply, of course, favors Underwood. In a summary judgment determination, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, ... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Chrysler Workers Association v. Chrysler Corp., 834 F.2d 573, 578 (6th Cir.1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). See also Boddy v. Dean, 821 F.2d 346, 348-49 (6th Cir.1987). Applying this standard, Underwood has produced enough evidence to raise a question of material fact in support of his contention that he was still employed by the defendant on January 4, 1984, to justify sending the issue to a factfinder.
 
 
 17
 We REVERSE the district court and REMAND for further proceedings.
 
 
 18
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 19
 I agree that plaintiff Underwood could not recover on his wrongful discharge claim without showing that he was an employee of defendant North Slope Properties at the time of the accident, and I agree also that there was evidence on which this issue could have been resolved in Mr. Underwood's favor. If Mr. Underwood was still a North Slope employee at the time of his injury, however, that fact alone would not establish that he was wrongfully discharged nine months later, when he offered to return to work and was told that the defendant had no work for him to do. Because the record, as I read it, shows that Mr. Underwood had no proof at all that he was discharged in retaliation for having filed a workers' compensation claim, rather than for lack of work, I would affirm the district court's grant of summary judgment.
 
 
 20
 "During the discovery process," as defendant North Slope advised the district court in the brief accompanying the motion for summary judgment, "it was brought out that Underwood feels that he was discharged by North Slope for having filed a workers' compensation claim." Pending before the district court at the time the summary judgment motion was filed, as the same brief also noted, was a motion for leave to file a second amended complaint "formally plead[ing] wrongful discharge as a result of the defendant employer's defense of a workers' compensation claim." Defendant North Slope's rejoinder, as succinctly stated in its district court brief, was as follows:
 
 
 21
 "[T]his factor alone, upon which Underwood's claim is solely based, does not show that he was fired in retaliation for having filed the claim. During the discovery period Underwood was asked by counsel for North Slope upon what grounds he was basing his claim for wrongful discharge and Underwood was not able to propose any reason other than North Slope's opposition to his workers' compensation claim. (Underwood dep., p. 52-53)."
 
 
 22
 The cited deposition testimony fully supports defendant North Slope's characterization of it:
 
 
 23
 "Q. Your testimony is that you feel that North Slope refused to take you back because you filed a workers' comp claim against them?
 
 
 24
 A. That was just my thinking, is the reason that they didn't take me back.
 
 
 25
 Q. And the only indication you have to support that thinking would be the fact that you had a difficult time getting your hospital bills paid?
 
 
 26
 A. Definitely, and getting in the hospital.
 
 
 27
 Q. Is there anything else that makes you think--that supports that thought you have?
 
 
 28
 A. No, I just--To me, I couldn't see no reason for taking that long for me to get in the hospital, and taking so long to get my bills paid, and things. It should've been done a lot sooner than what it was, to my knowledge."
 
 
 29
 In his brief opposing defendant North Slope's motion for summary judgment, plaintiff Underwood told the district court that he
 
 
 30
 "was terminated by North Slope because he filed a Workers' Compensation claim. (Underwood, dep., p. 49).
 
 
 31
 Plaintiff respectfully submits that defendant's motions to dismiss and for summary judgments are nothing more than an argument about facts and they should be denied."
 
 
 32
 The fact is that the testimony on which Mr. Underwood relied to show that his employment had been terminated because of the filing of a workers' compensation claim could not possibly have supported a jury verdict in his favor and failed to establish the existence of a genuine issue for trial. All that Mr. Underwood said about retaliation on page 49 of his deposition was this:
 
 
 33
 "Q. Do you have any knowledge that North Slope didn't take you back because of the fact that you filed a workers' comp claim?
 
 
 34
 A. That was what I figured.
 
 
 35
 Q. What made you figure that?
 
 
 36
 A. Well, see, if Mr. Kahn had told me he had insurance and we could have got this all settled, it wouldn't've come to this. It definitely wouldn't. But I lost everything I had.
 
 
 37
 Q. That's the only thing you can think of that indicates to you that they didn't take you back, because you had filed a workers' comp claim?
 
 
 38
 A. Really, that's what I assumed; because I had filed a workers' comp claim against them."
 
 
 39
 I have no doubt that this testimony was given in complete good faith, but the testimony hardly meets the requirement imposed by Rule 56(e), Fed.R.Civ.P. Under that rule, the response of the adverse party (here Mr. Underwood) "must set forth specific facts showing that there is a genuine issue for trial." (Emphasis supplied.) What Mr. Underwood "figured" or "assumed" about North Slope's reason for telling him that it had no work for him to do hardly rises to the dignity of "specific facts." We asked Mr. Underwood's counsel at oral argument whether anything in the record showed that North Slope did in fact have work for Mr. Underwood to do, and we were told that no such showing was made.
 
 
 40
 It is true that the district court did not find it necessary to decide whether Mr. Underwood's deposition testimony was sufficient to establish the existence of a genuine issue for trial, but this is a simple question of law which we are as well equipped to decide as the district court is. As we noted in Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981),
 
 
 41
 "An appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and can ignore any erroneous basis relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory.... A defendant may raise an alternative theory without cross-appealing." (Citations omitted.)
 
 
 42
 Mr. Underwood has certainly not been denied an opportunity to respond to the "new" theory. He responded--directly, if inadequately--in the papers opposing the summary judgment motion in the district court, and he responded--again inadequately--in oral argument before this court. I see no need for a remand under these circumstances.
 
 
 43
 It remains to me only to note that, on the record before us, Mr. Underwood may not recover for emotional distress occasioned by the denial of his workers' compensation claim. Just as the denial of the workers' compensation claim was not probative of retaliation, see Axel v. Duffy-Mott Co., 389 N.E.2d 1075, 1080 (N.Y.Ct. of App.1979), the record discloses no factual basis for categorizing the denial of the claim as conduct that exceeds "all reasonable bounds of decency and is utterly intolerable in a civilized community." Craft v. Rice, 671 S.W.2d 247, 250 (Ky.1984). "Outrage" and wrongful discharge were the only two causes of action that plaintiff Underwood was asserting at the time of the summary judgment proceedings, and the pleadings, depositions and other papers on file showed that Mr. Underwood could not sustain either claim as a factual matter. Defendant North Slope was entitled to judgment as a matter of law, in my view, and I would affirm the judgment of the district court notwithstanding that the court reached the right result for the wrong reason.
 
 
 
 [1]
 Underwood also testified in his deposition that North Slope paid him a $50 Christmas bonus by check in 1983. North Slope's president denied in his deposition that it paid Underwood after October
 
 
 [2]
 Underwood's lawyer conceded that he had withdrawn this claim during Underwood's deposition