Marna D. TERLECKY, Plaintiff,

v.

**TEAMSTERS UNION LOCAL #507, et al., Defendants.**

No. 1:91 CV 1331.

United States District Court, N.D. Ohio, E.D.

April 15, 1992.

Katherine C. Smith, Nicely & Wagner, Akron, Ohio, for plaintiff.

Keith R. Wolgamuth McCormack, Wolgamuth & Watling, Stephen M. Nobil, Neil E. Klingshirn, Millisor & Nobil, Cleveland, Ohio, William O. Sargent A. David Mikesell Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendants.

## ORDER

BATTISTI, District Judge.

Before the Court is a motion to dismiss filed by Defendant Teamsters Union Local #507 (union) and a motion for summary judgment filed by Defendant Handleman Company (Handleman). For the reasons set forth below, both motions are denied.

Plaintiff Marna Terlecky (Terlecky) was employed by Defendant Handleman. In June 1990, Terlecky was laid off. In October 1990, she was recalled. In addition, in October 1990, she filed a grievance concerning the layoff from which she had been recently recalled. On February 1, 1991, she was laid off again. At that time, she filed another grievance. On July 9, 1991, she filed the instant complaint, alleging that the union did not pursue this grievance. The present case concerns, *inter alia,* the fact that Defendant Handleman maintained two separate seniority lists, one for the Record Division, in which Terlecky worked, and another for the Book Division, where Terlecky sought employment during her earlier layoff (June to October 1990).

The union argues that the present cause of action is barred by the applicable statute of limitations. The union and Terlecky agree that the case at bar is a so-called "hybrid action" raising claims under § 301 of the Labor Managment Relations Act and the duty of fair representation, and a six-month statute of limitations applies. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Chrysler Workers Association v. Chrysler Corp.,* 834 F.2d 573 (6th Cir.1987), *cert. denied* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). The case law indicates that the limitations period begins to run when a plaintiff knew or should have known of the cause of action. *Chrysler Workers,* 834 F.2d at 578–81; *McCreedy v. Local Union 971,* 809 F.2d 1232, 1236–37 (6th Cir.1987). It is on the date of accrual which the parties disagree.

The two possible starting dates for the limitations period are (1) October 18, 1990, when Terlecky attended a meeting during which the dual seniority system was discussed and (2) after February 1, 1991, when Terlecky was laid off for the second time, filed a grievance, and eventually initiated the present litigation.[1] While Defendant argues strongly for the first option, Plaintiff favors the second. Of course, measuring from the union's date, the cause of action is time barred, and from plaintiff's date, it is timely filed.

Defendant relies on a per curiam decision of the Eleventh Circuit which states that "[f]or the purpose of determining when the § 10(b) period begins to run, we look to when plaintiffs either were or should have been aware of the injury itself, not to when plaintiffs became aware of one of the injury's many manifestations." *Benson v. General Motors Corp.,* 716 F.2d 862, 864 (11th Cir.1983). The Sixth Circuit has not explicitly followed the *Benson* approach. A district court within the circuit has distinguished it. *Belic v. General Motors Corp.,* 588 F.Supp. 633, 636–37 (S.D.Ohio 1984), *affirmed without opinion* 818 F.2d 866 (6th Cir.1987).

The *Belic* court explained that the Eleventh Circuit approach "is appropriate when

---

1. Another possibility is sometime before the October 18 meeting. During the earlier layoff, Terlecky approached the Book Division for a job and may have been affected by dual seniority lists. However, Defendant does not argue at any length for an accrual date prior to October 18. In any event, Handleman and the union provided conflicting information regarding the seniority system before October 18. The union, moreover, did not pursue the earlier grievance because of its own deadlines for filing grievances. Thus, on that occasion, the union did not reach the merits of the grievance and its decision cannot be taken as having given Terlecky any notice of dual seniority lists.

the union's conduct is related to the negotiations of the [collective bargaining agreement (CBA)] in question ... However, when the unions' misconduct is separated from the negotiations of the CBA (e.g., the withdrawal of grievances, as herein), *the facts surrounding the unions' conduct in implementing the agreement provides the appropriate point for accrual of the action."* *Id.* (*citing Smart v. Ellis Trucking Co.*, 580 F.2d 215 (6th Cir.1978), *cert. denied* 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979)) (emphasis added).

This Court finds the reasoning of the *Belic* court persuasive. As in *Belic*, the present case turns on a failure to pursue a grievance. In essence, the union's contention is that all of the facts which could form the basis of a cause of action were known to the plaintiff before the particular harm complained of had actually occurred. Where the alleged breach of the duty of fair representation concerns the negotiation of a CBA, then these underlying facts are more readily apparent than when an alleged breach arises with withdrawal of grievances. In some instances, it is only when the injury manifests itself that it is revealed. Here, for example, Terlecky was not affected by dual seniority lists until she was laid off. Furthermore, she may have thought, with reason, that the union would pursue a grievance about dual seniority lists.

Under the *Belic* approach, the accrual date falls after February 1, 1991, and the complaint was filed in a timely fashion.

Even if the Court declined to follow the *Belic* court, the confusion concerning dual seniority lists, which prompted the October 18 meeting, was not resolved fully at that meeting. The business agent expressly stated that the collective bargaining agreement, past practice, and the union's position were confusing if not contradictory. The transcript from that meeting is especially important in showing the lack of any clear understanding about dual seniority lists. Indeed, as the meeting was apparently intended to provide assurances to union members, it may have misled some into believing that a policy would be followed to benefit everyone. Excerpts are given in the margin.[2] Furthermore, the complaint alleges that Plaintiff believed that a vote on the seniority system would take place at the meeting, but was cancelled, with the issue left unresolved. Complaint ¶ 23–25 at 5. Excerpts from Plaintiff's deposition reflect doubts about the precise policy on seniority. As a consequence, it would be inaccurate and unfair to conclude that Plaintiff knew or should have known, as of October 18, 1990, that she would be adversely affected by dual seniority lists.

**2.** The contract language is something that sometimes can read and sound a little confusing. Def.Ex.H at 3.

So you were going in essence by two lists even though the contract says there should be one list. *Id.* at 5.

All of our contracts say that there's one way to get laid off. The last person hired is the first person laid off. Anything other than that, as far as we're concerned is self serving the individuals that want to circumvent the fact that there's one seniority list is the way it's usually accepted in most unions, including 507. *Id.* at 6.

The company, your company, doesn't even know how to interpret [the contract] ... the company's practice over the years has been consistent—employees have been hired, laid off and recalled on the basis of [two seniority lists.] *Id.* at 7.

I know it's a shame that people think that somebody is brand new should be over there getting hired and people that originally got into the union in here get laid off. But because of the past practice, what we felt was the proper way to do it after all of the conversations that we have been having, we said we're going to leave it two separate seniority lists, and then your contract is up in 1992, May of 1982 [sic], and if you people decide at that time that you want to go back to one seniority list, which we would encourage, but you had have 10 years of past practice, if you want to change it, we feel that's the time to do it. And in the negotiations, and then we'll make some sort of contract language and talk about what we do. *Id.* at 9–10.

This is just confusing you. [I have a letter that states] what we agreed to do, even though you were going to have two separate seniority lists, if let's say Judy has got two years in books and some woman with five years gets laid off in the music department, well, if there's going to be any additional people hired to go over into the book department, whoever is laid off from the music department will be offered the opportunity to go over into the book department before they hire a new person off the street. *Id.* at 10–11.

*See also id.* at 21.

The Court also notes that Terlecky raises a claim that the union and Handleman decided on the layoff because she has a child with Down's syndrome, and incurs extensive medical costs. This claim appears independent from any claim related to dual seniority lists. Thus, it would survive even if the union's arguments were accepted with regard to dual seniority lists.

For all of the foregoing reasons, the Court holds that the statute of limitations did not begin to run at the October 18, 1990, meeting, but rather with the February 1, 1991, layoff. Plaintiff's claim was filed within six months of that later date. As for the argument on the merits presented in the union's motion, the Court cannot conclude, as a matter of law, that the union fulfilled its duties. Finally, as Defendant Handleman's motion is dependent on the union prevailing, it also cannot be sustained. However, Defendant Handleman may renew its motion for summary judgment when it can be supported by a fuller development of the factual record.

The motion to dismiss filed by the union and the motion for summary judgment filed by Defendant Handleman are DENIED.

IT IS SO ORDERED.