914 F.2d 795
 135 L.R.R.M. (BNA) 2527, 116 Lab.Cas. P 10,303,
5 Indiv.Empl.Rts.Cas. 1329
 Minnie P. FOX and Charles F. Fox, Plaintiffs-Appellants
(89-3564/3565), and Cross-Appellees,
v.
PARKER HANNIFIN CORPORATION, Defendant-Appellee,
and
International Association of Machinists and Aerospace
Workers, District 54, Defendant-Appellee and
Cross-Appellant (89-3566),
and
Evelyn Wallace, Dolores Fox, Elaine Joyner, Blanche
Kormanyos, Mary Garrison, Mary Helsley, Elfriede
Stames and Angelo Stames, Defendants-Appellees.
 Nos. 89-3564, 89-3565 and 89-3566.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 24, 1990.
Decided Sept. 20, 1990.
 
 Daniel T. Todt, argued, Rebecca L. Todt, Cleveland, Ohio, for plaintiffs-appellants and cross-appellees.
 Bruce G. Hearey, Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, for defendants-appellees.
 David Roloff, argued, Gaines & Stern, Cleveland, Ohio, for defendant-appellee and cross-appellant.
 Marillyn Fagan Damelio, argued, Cleveland, Ohio, for defendant-appellee Angelo Stames.
 Before KEITH and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 In this wrongful discharge action, plaintiff Minnie Fox appeals from the entry of summary judgment on statute of limitations grounds as to both her hybrid section 301[1] claim and her state law claim for tortious interference with contractual relations, which the district court treated as preempted by section 301. In addition, defendant International Association of Machinists and Aerospace Workers, District 54 (the Union), challenges the district court's determination that section 301 does not preempt various other state law claims asserted by plaintiffs Minnie and Charles Fox. We affirm the district court's application of the six-month statute of limitations insofar as Minnie Fox's hybrid section 301 claim and all preempted state law claims are concerned, but reverse the district court's rulings regarding the preemptive impact of section 301 on several of the plaintiffs' state law claims. Finally, we affirm the district court's dismissal without prejudice of all state law claims beyond the preemptive scope of section 301.
 
 I.
 
 2
 Minnie Fox began her employment with defendant Parker Hannifin Corporation (the Company) on May 15, 1963. Throughout her tenure as a machine operator with the Company, she was a member of the Union employed under a collective bargaining agreement (CBA) negotiated between the Company and the Union. She apparently worked without difficulty for the Company until 1976, when she and various co-workers began to trade accusations of harassment. In her view, the problems began when she opposed one of her co-worker's attempts to instigate a wildcat strike. She filed grievances in 1977 and 1981 alleging that supervisory personnel were persecuting her. In both instances, the grievances were resolved. Additionally, she repeatedly lodged informal complaints with the Union and the Company concerning what she perceived as harassment by her co-workers.
 
 
 3
 In 1981, 1984, and 1986, the Company suspended plaintiff Minnie Fox for "restricting production" and "interfering with employees." Each suspension precipitated the filing of a grievance on her behalf, and each grievance was either resolved or withdrawn. In June of 1987, she was convicted on a criminal charge of harassing co-worker Elfriede Stames by telephone. On June 10, 1987, the Company sent the plaintiff a letter advising her that "effective today your employment with Parker Hannifin Corporation is terminated due to continued verbal harassment and threats to employees." A grievance subsequently filed on June 22, 1987, asserted that the discharge contravened the terms of the operative CBA between the Company and the Union, but the Company refused to reinstate Fox. Pursuant to the provisions of the CBA, Fox's unresolved grievance ultimately was referred to the Federal Mediation and Conciliation Service (FMCS) for a conciliation hearing as the fifth and final step in the grievance resolution process. See CBA Art. V, Sec. 1, Step 5. Following the FMCS hearing in August of 1987, which apparently produced no binding result, the Company remained resolute in its opposition to rehiring her, and she agreed with her Union representatives that her only remaining avenue of recourse--seeking a strike vote by the Union membership--would be futile. Therefore, in September of 1987, Union shop steward Tony Kastelic notified Fox that the Company would not reinstate her and the Union did not intend to take any further action on her behalf. One year later, on September 12, 1988, Fox and her husband Charles filed this action against the Company, the Union, various Company employees, and one employee's husband.[2]
 
 
 4
 In their 14-count complaint, Minnie and Charles Fox set forth a hybrid section 301 claim against the Company and the Union. See, e.g., White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559-60 (6th Cir.1990) (explaining theory of hybrid 301 claims). Additionally, the plaintiffs alleged a host of pendent state claims against various defendants under Ohio law including tortious interference with contractual relations, slander, breach of contract and promissory estoppel, negligence, wrongful discharge in violation of public policy, fraud, intentional infliction of emotional distress, and loss of consortium on behalf of Charles Fox. In response to the defendants' motions for dismissal and summary judgment, the district court filed a memorandum opinion on May 4, 1989, explaining that the applicable six-month statute of limitations barred the hybrid section 301 claim. After finding the tortious interference claim subject to section 301 preemption, the district court likewise dismissed that claim. Having eliminated all of the plaintiffs' federal causes of action from the lawsuit, the district court dismissed the remaining pendent state claims without prejudice. This appeal by the plaintiff, as well as the Union's cross-appeal, followed.
 
 
 5
 The plaintiffs identify three assignments of error on appeal. First, they contend that the district court erred in ruling that Minnie Fox's state law claim for tortious interference with her employment contract falls within the ambit of section 301 preemption. Second, they challenge the district court's application of the six-month statute of limitations to bar Minnie Fox's hybrid section 301 claim and her preempted tortious interference claim. Finally, they argue that the district court erroneously refused to exercise pendent jurisdiction over their remaining state law claims. The Union's cross-appeal contests the district court's rulings that section 301 does not preempt the plaintiffs' state law claims for breach of contract and promissory estoppel, negligence, fraud, intentional infliction of emotional distress, and loss of consortium.[3]
 
 II.
 
 6
 Section 301, by its terms, governs "[s]uits for violation of contracts between an employer and a labor organization...." 29 U.S.C. Sec. 185(a). However, the Supreme Court has read section 301 expansively to include individual collective bargaining workers' claims. See, e.g., Smith v. Evening News Ass'n, 371 U.S. 195, 200-01, 83 S.Ct. 267, 270-71, 9 L.Ed.2d 246 (1962). The Court also has deduced that section 301 "authorizes federal courts to fashion a body of federal law for the enforcement" of CBAs. See Textile Workers v. Lincoln Mills, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). To ensure uniformity in this area of federal law, the Court has further concluded that " '[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts.' " Caterpillar Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). In this respect, section 301 constitutes an exception to the well-pleaded complaint rule because "the pre-emptive force of Sec. 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' " Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). "State law is thus 'pre-empted' by Sec. 301 in that only the federal law fashioned by the courts under Sec. 301 governs the interpretation and application of collective-bargaining agreements." United Steelworkers of America v. Rawson, --- U.S. ----, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990).
 
 
 7
 The preemptive reach of section 301, however, is by no means boundless. Section 301 preempts only state law claims that are "substantially dependent on analysis of a collective-bargaining agreement," see, e.g., International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2166-67 n. 3, 95 L.Ed.2d 791 (1987), not claims that only "tangentially" involve CBA provisions. See, e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Furthermore, a defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption. See Caterpillar, 482 U.S. at 399, 107 S.Ct. at 2433; accord Smolarek v. Chrysler Corp., 879 F.2d 1326, 1334 (6th Cir.) (en banc), cert. denied, --- U.S. ----, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). Underlying these basic rules is the fundamental precept that "Sec. 301 preemption merely ensures that federal law will be the basis of interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon interpretation of such agreements." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409, 108 S.Ct. 1877, 1878, 100 L.Ed.2d 410 (1988) (footnote omitted). Accordingly, whenever a plaintiff's state law claim "can be resolved without interpreting the [CBA] itself, the claim is 'independent' of the [CBA] for Sec. 301 preemption purposes." Id. at 410, 108 S.Ct. at 1878 (footnote omitted). Applying these principles, we must analyze six of the plaintiffs' state law claims to determine which, if any, are preempted by section 301.
 
 A.
 
 8
 The district court determined that section 301 preempts Minnie Fox's claim under Ohio law against the Union and her co-workers for tortious interference with contractual relations. In Dougherty v. Parsec, Inc., 872 F.2d 766 (6th Cir.1989), however, we ruled that such a claim under Ohio law is not subject to section 301 preemption.[4] Our decisions in Dougherty and Beard v. Carrollton R.R., 893 F.2d 117 (6th Cir.1989), have made clear that tortious interference with contractual relations claims are preempted if, but only if, breach of contract is an "essential element" of such a state law claim. See Beard, 893 F.2d at 122 & n. 1 (considering Kentucky law claim); Dougherty, 872 F.2d at 770. Otherwise, such claims are not preempted because they "can be resolved without interpreting" CBA terms. See Lingle, 486 U.S. at 410, 108 S.Ct. at 1878. Under Ohio law as interpreted in Dougherty, "an underlying determination of the merits of the state claim will not have to consider whether there was an actual breach of contract--only whether there was an interference by [the Union and Minnie Fox's co-workers] that in some way affected the business relationship of" Fox and the Company. Dougherty, 872 F.2d at 770.
 
 
 9
 The Union attempts to distinguish Dougherty as a case against "a third party who was not a signatory to the applicable collective bargaining agreement." The Union's status as a party to the CBA, however, has no bearing upon the preemption analysis because that fact neither changes the elements of the plaintiff's claim nor directly implicates any provision of the collective bargaining agreement. See, e.g., Lingle, 486 U.S. at 409-10, 108 S.Ct. at 1878 (considering retaliatory discharge claim against employer--a CBA signatory). Ohio law may, in fact, preclude a tortious interference claim against a party to the contract, cf. Dzierwa v. Michigan Oil Co., 152 Mich.App. 281, 287, 393 N.W.2d 610, 613 (1986) ("To maintain a cause of action for tortious interference with a contract, a plaintiff must establish ... that the defendant was a 'third party' to the contract or business relationship...."), thus barring the plaintiff from pursuing her claim against the Union as a matter of state law, but such a result is of no moment insofar as preemption under section 301 is concerned. Dougherty dictates that the tortious interference with contractual relations claim falls beyond the preemptive reach of section 301; the district court's contrary conclusion is REVERSED.
 
 B.
 
 10
 Minnie Fox's breach of contract and promissory estoppel claim against the Company and Union predicated solely upon their alleged promises "that they would control the situation regarding her job harassment" was treated by the district court as outside the preemptive scope of section 301. The district court's analysis on this point conflicts with our rulings in Maushund v. Earl C. Smith, Inc., 795 F.2d 589 (6th Cir.1986), and Ulrich v. Goodyear Tire & Rubber Co., 884 F.2d 936 (6th Cir.1989). We determined in Maushund that "[t]he collective bargaining process prohibits [a bargaining unit employee] from engaging in separate negotiations with the company and precludes any actions to enforce such an agreement." Maushund, 795 F.2d at 590. In Ulrich, a case involving a breach of contract and promissory estoppel claim under Ohio law, we unequivocally stated the implicit holding of Maushund: employees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims.[5] Ulrich, 884 F.2d at 938. Here, as in Ulrich, "[t]he existence of the plaintiffs' so-called 'state law claim' is inextricably intertwined with the CBA. It depends on the practices of the workplace under the CBA." Id. Accordingly, we REVERSE the district court's ruling and hold that the breach of contract and promissory estoppel claim is preempted by section 301.
 
 C.
 
 11
 In a claim pertaining to her employment contract, Minnie Fox alleges that the "Company and Union committed the [t]ort of [n]egligence as the parties to any contract have a duty of reasonable care in carrying out the obligations of the contract [.]" (Emphasis added). The district court ruled that section 301 does not preempt such a claim, but the Supreme Court's recent decision in Rawson, 110 S.Ct. 1904, suggests otherwise. The Court in Rawson initially noted "that the preemptive force of Sec. 301 extends beyond state contract actions[,]" id. at 1909, and then explained that section 301 preempts claims for negligence in the performance of "a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the [employees]." Id. at 1910. Here, preemption of the plaintiff's negligence claim is inevitable because the underlying duty arises directly from the CBA. See id. As in Rawson, "[t]his is not a situation where the Union's [and the Company's] delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society." Id. Therefore, the district court's finding with respect to the negligence claim is REVERSED.
 
 D.
 
 12
 The plaintiff's nebulous fraud claim merely states that the "Company and Union committed the [t]ort of [f]raud in that by their actions they made representations to Minnie that they knew were false when made regarding investigating her grievances and complaints [.]" (Emphasis added). While state law causes of action for fraud independent of CBA rights and duties unquestionably can evade the preemptive reach of section 301, the allegation in this case is a classic example of the "comparatively amorphous [tort] claims in the employment context [that] fall prey to Sec. 301 preemption because they fail to articulate theories clearly independent of collective bargaining agreement rights and obligations." See Yates, Cutting the Gordian Knot: A Principled Response to Removal of State Law Claims to Federal Court Based on Section 301 Preemption, 6 Cooley L.Rev. 483, 487 n. 33 (1990). The plaintiff seemingly has predicated her fraud claim solely upon the manner in which the Company and the Union carried out the CBA-defined process of reviewing her various grievances. Such a claim, which directly implicates both the substantive and procedural aspects of the CBA grievance provisions, clearly falls within the ambit of section 301 preemption in the same manner as the plaintiff's fraud claim in Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1037-38 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990). As in Terwilliger, where the CBA "create[d] the right to re-employment claimed by Terwilliger and provide[d] the only basis for the relationship between Terwilliger and [his employer]," id. at 1038, the CBA in this case affords the single mechanism for pursuing, reviewing, and resolving the grievances at the heart of the plaintiff's fraud claim. Thus, the plaintiff has merely alleged that the Company and the Union engaged in fraudulent malfeasance of CBA obligations. Both the logic of Rawson and the express holding of Terwilliger require preemption of such a claim. See Rawson, 110 S.Ct. at 1909-11; Terwilliger, 882 F.2d at 1037-38. The district court's contrary determination is REVERSED.
 
 E.
 
 13
 According to the complaint, the alleged harassment to which the defendants subjected Minnie and Charles Fox forms the basis for the plaintiffs' intentional infliction of emotional distress claim. The allegations in the complaint, as well as Minnie Fox's deposition testimony, suggest that this harassment occurred not only at work, but also outside the workplace. Although state law claims for intentional infliction of emotional distress strictly based upon a defendant's exercise of CBA rights do not escape the preemptive force of section 301, see, e.g., Brown v. Southwestern Bell Tel. Co., 901 F.2d 1250, 1255-56 (5th Cir.1990); Beard, 893 F.2d at 122-23, such claims premised upon abusive behavior above and beyond the routine exercise of CBA rights are not preempted. See, e.g., Knafel v. Pepsi-Cola Bottlers of Akron, Inc., 899 F.2d 1473, 1483 (6th Cir.1990); O'Shea v. Detroit News, 887 F.2d 683, 687 (6th Cir.1989). In other words, to avoid section 301 preemption of an intentional infliction of emotional distress claim, the state tort must be " 'either unrelated to the employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.' " Beard, 893 F.2d at 123 (quoting Farmer v. United Bhd. of Carpenters, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977)). Here, as in Knafel, Minnie Fox's "alleged emotional distress was not a result of her termination, but rather of the abuse she claims to have endured while employed." Knafel, 899 F.2d at 1483. Likewise, Charles Fox's claim relates to alleged abuse entirely divorced from conduct authorized or even contemplated by the CBA. Consequently, whether the defendants harassed the plaintiffs "so outrageously as to cause [them] emotional distress" is an issue that can be decided without interpreting the CBA. See Knafel, 899 F.2d at 1483. Thus, we AFFIRM the district court's ruling that the plaintiffs' cause of action for intentional infliction of emotional distress is not preempted.
 
 F.
 
 14
 The final state law cause of action subject to review on appeal--Charles Fox's loss of consortium claim--does not require independent section 301 preemption analysis. Under Ohio law, "[a] claim for loss of consortium is a derivative action, deriving from a spouse's claim for bodily injury." Tomlinson v. Skolnik, 44 Ohio St.3d 11, 14, 540 N.E.2d 716, 719 (1989). Because several of Minnie Fox's tort claims fall beyond the scope of section 301 preemption, her husband's cause of action for loss of consortium perforce is not preempted insofar as it relates to such viable state law claims. The district court's holding to this effect is AFFIRMED.
 
 III.
 
 15
 Having established which of the plaintiffs' causes of action must be treated as section 301 claims, we must ascertain whether these section 301 claims are time-barred. In DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court conclusively established that section 301 actions brought by individual employees are governed by the six-month statute of limitations borrowed from section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b). According to settled law in this circuit, a section 301 claim accrues " 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' " Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d 573, 581 (6th Cir.1987), cert. denied, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988); Shapiro v. Cook United, Inc., 762 F.2d 49, 51 (6th Cir.1985). Because a section 301 claim "accrues against the company when it accrues against the union[,]" McCreedy v. Local Union No. 971, UAW, 809 F.2d 1232, 1236 (6th Cir.), reh'g denied, 818 F.2d 6 (6th Cir.1987), we must establish a single accrual date for each section 301 claim and then ascertain whether the plaintiffs filed suit within six months of that date.
 
 
 16
 Among the three state law causes of action subject to section 301 preemption--breach of contract and promissory estoppel, negligence, and fraud--we find no claim that was asserted within the applicable six-month limitations period. The breach of contract and promissory estoppel claim, which is predicated entirely upon the alleged failure of the Company and the Union to control "job harassment" of Minnie Fox, necessarily accrued on or before June 10, 1987, when the Company discharged the plaintiff. Likewise, Fox's fraud claim relating to investigation of grievances and complaints accrued on or before the date of her discharge. Finally, her cause of action against the Company and the Union for negligence in the execution of CBA obligations accrued, at the latest, upon exhaustion of the fifth and final step in the CBA grievance procedure in August of 1987. From that point forward, neither the Company nor the Union undertook any further contractual obligation to Minnie Fox that could have been performed negligently. Because none of the preempted state law claims was filed until September 12, 1988, each of the preempted claims is time-barred.[6]
 
 
 17
 The district court expressly determined that Minnie Fox's hybrid section 301 claim against the Company and the Union was not filed within six months of accrual. At her deposition, Fox repeatedly conceded that, in September of 1987, Union shop steward Kastelic told her in unmistakable terms that the Union had exhausted every possible avenue of relief on her behalf. She concurred in the Union's opinion that a strike vote would be futile, thereby voluntarily forgoing the only remaining course of action at her disposal under CBA and Union procedures. Nevertheless, she apparently remained in contact with the Union, and ultimately received a certified letter dated March 18, 1988, stating as follows:
 
 
 18
 As you know, the Union has been pursuing a grievance on your behalf as a result of your discharge. Unfortunately, the Company still refuses to grant you the relief you seek. As you are well aware we took your grievance to Federal Mediation and were unsuccessful in changing the Company's mind. As the Shop Steward told you, our only alternative would be to take a strike vote. In prior conversations with the Shop Steward and this writer you were in agreement with us that the membership would not strike over this matter and as a result there is nothing more the Union can do for you.
 
 
 19
 This letter, in the plaintiff's view, entitled her to file suit within six months of March 18, 1988. We disagree.
 
 
 20
 Here, the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation supporting her hybrid section 301 claim in September of 1987 when shop steward Kastelic informed her that she would not be reinstated. In fact, the March 18, 1988, letter specifically indicates that Kastelic fully explained the situation to Fox long before the letter was sent. We reject the plaintiff's argument that her perseverance despite the lack of available relief and the Union's resulting formal restatement of its position in the certified letter reset the accrual date for her hybrid section 301 claim. As the Seventh Circuit remarked in considering a similar situation:
 
 
 21
 [W]hile the Union continued to respond to plaintiff's requests for a hearing before the Board, the courtesy it extended him should not be viewed as procrastination sufficient to toll the statute [of limitations]. Otherwise, a plaintiff could indefinitely delay resolution of labor disputes merely by bombarding his union with tiresome requests for needless review.
 
 
 22
 Dozier v. Trans World Airlines, Inc., 760 F.2d 849, 852 (7th Cir.1985). We AFFIRM the district court's determination that the hybrid section 301 claim is time-barred.
 
 IV.
 
 23
 The plaintiffs' final objection to the district court's decision pertains to the dismissal without prejudice of all unpreempted state law claims. Specifically, the plaintiffs assert that the district court "erred in refusing to exercise its pendent jurisdiction where the predominant claim was the federal cause of action." The Supreme Court has unequivocally stated that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnote omitted); accord Knafel, 899 F.2d at 1483. Thus, the district court did not have to retain jurisdiction over the plaintiffs' state claims even if one or more of the federal claims remained at issue. In this case, however, the district court properly dismissed all of the plaintiffs' federal claims as time-barred, thus eliminating any possible basis for federal question jurisdiction. See 28 U.S.C. Sec. 1331. As the Supreme Court has explained, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139; see also Service, Hosp., Nursing Home and Public Employees Union v. Commercial Property Serv., Inc., 755 F.2d 499, 506 n. 9 (6th Cir.) ("This circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial."), cert. denied, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). We therefore AFFIRM the district court's dismissal without prejudice of the plaintiffs' unpreempted state claims; the plaintiffs are "free to refile [their] state claims in Ohio state court, in accordance with the Ohio saving statute, Ohio Rev.Code Sec. 2305.19." Knafel, 899 F.2d at 1483; see also Grant v. ARA Servs., Inc., 626 F.Supp. 66, 71 (S.D.Ohio 1985).
 
 
 
 [1]
 29 U.S.C. Sec. 185 (section 301 of the Labor-Management Relations Act)
 
 
 [2]
 The plaintiffs also named as defendants several attorneys and law enforcement officers involved in the 1987 prosecution that resulted in Minnie Fox's conviction on the telephone harassment charge. The dismissed claims against these individuals and municipal defendants have no bearing upon the outcome of this appeal
 
 
 [3]
 Because the plaintiffs did not name the Union as a defendant with respect to their claims for slander and wrongful discharge in violation of public policy, and none of the other defendants has pursued a cross-appeal, we need not address the district court's determination that section 301 does not preempt either of these state claims
 
 
 [4]
 A divided panel of this court initially found the plaintiff's tortious interference claim subject to section 301 preemption, see Dougherty v. Parsec, Inc., 824 F.2d 1477 (6th Cir.1987), but after the Supreme Court vacated that decision and remanded the case for further consideration, see Dougherty, 486 U.S. 1049, 108 S.Ct. 2812, 100 L.Ed.2d 914 (1988), the panel unanimously reversed its earlier decision
 
 
 [5]
 Although rights under individual employment contracts predating the existence of a CBA are not extinguished by the subsequent negotiation of a CBA, see Caterpillar, 482 U.S. at 396, 107 S.Ct. at 2431, and promises made by an employer after the expiration of a CBA similarly may give rise to viable state law claims for breach of contract, see, e.g., Overby v. Chevron USA, Inc., 884 F.2d 470, 473-74 (9th Cir.1989), plaintiff Minnie Fox cannot rely upon either of these theories to avoid section 301 preemption of her contract claim because she worked under a CBA throughout her tenure with the Company
 
 
 [6]
 Since negligence claims are not cognizable under section 301, see, e.g., Rawson, 110 S.Ct. at 1911, the plaintiff's negligence claim would be foreclosed even if it were timely filed