In re GLASS, MOLDERS, POTTERY, PLASTICS & ALLIED WORKERS INTERNATIONAL UNION, LOCAL NO. 173, Petitioner.

No. 92–3269.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1992.

Decided Jan. 12, 1993.

Carl S. Yaller (argued), Glass, Molders, Pottery, Plastics & Allied Workers Intl. Union AFL–CIO, Media, PA and Mark A.

Rock, Suellen Oswald (briefed), Schwarzwald & Rock, Cleveland, OH, for petitioner.

Richard K. Wilcox (argued and briefed), Neil Myers, Euclid, OH and Tybo A. Wilhelms, Bugbee & Conkle, Toledo, OH, for respondents.

Before: KEITH, KENNEDY, and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The Glass, Molders, Pottery, Plastics & Allied Workers International Union, Local No. 173 ("Union") petitions this court for writ of mandamus directing the district court (1) to vacate certain portions of its order remanding "pendent state claims" to a state court, and (2) to dismiss any remaining state claims against the Union on the grounds that they are preempted by federal law, and are consequently time-barred. We grant the Union's petition.

## I. THE CASE

Joyce Gillette, the Plaintiff in the underlying case, *Gillette v. Continental Can Co.*, No. 1:91CV1765 (N.D.Ohio), used to work as a packer for Continental Can Company, Inc. ("CCC"). On October 3, 1988, she was suspended for allegedly walking off the production line, throwing away good bottles, insubordination, and refusing to pack bottles as directed. Gillette claims that, on that day, line foreman Richard Gober[1] physically assaulted her. She left the line to call the police. The police arrived, gave Gober a citation, and took him to the police station. Gillette's employment with CCC was terminated three days later.

Gillette filed a grievance regarding her discharge on October 10, 1988. As a member of the Union, Gillette was entitled to Union representation in bringing her grievance against CCC. The Union did in fact represent her through the five-step grievance process provided by the collective bargaining agreement. On November 15, 1989, at the end of the grievance process, an arbitrator ruled in favor of CCC. The Union advised Gillette (no later than December 1989) that it would not challenge the arbitrator's decision.

In August 1991, Gillette brought suit against CCC, Gober, and the Union, in the Cuyahoga County, Ohio, Court of Common Pleas. The claim against the Union, examined in detail *infra III.C.*, was essentially that the Union breached its duty of fairly representing Gillette. On September 6, 1991, the suit was removed to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1441 (1988), on the grounds that Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988) [hereinafter "Section 301"] preempted Gillette's claims. Gillette did not challenge the removal.

Upon removal and deposition of Gillette, the Union moved for summary judgment, arguing that a six-month statute of limitations barred Gillette's claim against the Union for breach of duty of fair representation under Section 301. Gillette responded, in part, that she could pursue a state "malpractice" claim against the Union as a separate cause of action, unaffected by a dismissal of her fair representation claim. She claimed that the Union breached duties to her which arose *outside* the collective bargaining agreement.

On February 12, 1992, the district court entered an order ("Order") granting partial summary judgment in favor of the Union. The court dismissed any and all federal claims as time-barred, and remanded her "pendent state claims including the allegations of retaliatory/wrongful discharge, malpractice, assault/battery, or breach of contract" to the Cuyahoga County Court of Common Pleas.

The Union petitioned this court for a writ of mandamus on March 18, 1992 to direct the district court: (1) to vacate that portion of its Order remanding Gillette's malpractice claim; and (2) to dismiss the malpractice claim on the grounds that it is preempted by federal law and thus time-barred.

---

1. Gober is sometimes spelled "Goeber" in the record.

## II. PRELIMINARY MATTERS

### A. Appellate Review of Remand Orders

■ If a district court remands a case based on the grounds listed in 28 U.S.C. § 1447(c) (1988), this court may not review the remand order. 28 U.S.C. § 1447(d) (1988); *Thermtron Products v. Hermansdorfer*, 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976) (Section 1447(d) "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ. This has been the established rule under § 1447(d) and its predecessors stretching back to 1887."). Section 1447(c), recently amended in 1988, reads:

> A motion to remand the case on the basis of any defect in removal procedures must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

■ In the instant case, upon dismissal of any and all federal claims as time-barred, the district court remanded the "pendent state claims." Such remand was discretionary with the court; it did not stem from lack of subject matter jurisdiction over the remaining claims. Since the grounds for removal fall outside the scope of Section 1447(c), *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 348–57, 108 S.Ct. 614, 617–23, 98 L.Ed.2d 720 (1988); *J.O. v. Alton Community Unit Sch.Dist. 11*, 909 F.2d 267, 269–71 (7th Cir.1990), the remand order is reviewable, but only through a petition for writ of mandamus, *Thermtron*, 423 U.S. at 352–53, 96 S.Ct. at 592–93.

### B. Standard of Review

■ The mandamus remedy is to be invoked only in extraordinary situations where petitioner's right to relief is clear and indisputable. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661–62, 98 S.Ct. 2552, 2556–57, 57 L.Ed.2d 504 (1978); *Kerr v. United States Dist. Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976). "The traditional use of the writ of mandamus has been to confine a lower court to lawfully exercise its prescribed jurisdiction or compel it to exercise its authority when it is its duty to so act." *In re King World Productions, Inc.*, 898 F.2d 56, 58 (6th Cir.1990); *see Kerr*, 426 U.S. at 402, 96 S.Ct. at 2123–24; *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87 L.Ed. 1185 (1943).

■ The Sixth Circuit set out its criteria for issuance of a writ of mandamus in *In re Bendectin Products Liability Litig.*, 749 F.2d 300, 304 (6th Cir.1984):

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

Though certain of these factors may be missing, a writ will issue if the other factors clearly warrant it. As well, these five factors might not all mandate the same conclusion. In many cases, proper disposition may entail a balancing of conflicting factors. *See In re King World Productions*, 898 F.2d at 58–59.

## III. APPROPRIATENESS OF THE WRIT

Upon review of the factors to be considered in ruling on a petition for writ of

mandamus, we conclude that the balance weighs in favor of the Union.

### A. No Other Means of Appellate Review

Since the district court's remand order is not reviewable on direct appeal, the Union has no other means to attain relief from this court. *See In re Life Ins. Co. of N. Am.*, 857 F.2d 1190, 1193 (8th Cir.1988).

### B. Potential Uncorrectable Damage

It is possible to interpret the district court's remand order as a tacit determination that federal law did not preempt Gillette's "malpractice" claim against the Union. This ruling might then preclude the Union from litigating the preemption issue further in state court. *See id.*

### C. Clear Entitlement to Relief

Gillette has stated no claims against the Union other than those which relate directly to its representation of her through the five-step grievance process against CCC. Such claims fall within the collective bargaining agreement, and are thus governed by federal law. Consequently, given that Gillette's federal claims have been found to be time-barred, it is clearly erroneous to remand any claim against the Union to the state court.

In her amended complaint, Gillette alleges that:

(1) The Union had a legal obligation to provide her with representation concerning the grievance filed on her behalf after her employment with the Company was terminated.

(2) The Union failed to provide her with appropriate representation as her grievance was processed.

(3) The direct and proximate consequence of the Union's negligent failure to provide her with adequate and appropriate representation was that she lost her arbitration hearing.

(4) The Union did not afford her further representation after her arbitration hearing.

At her deposition, Gillette brought forth more specific charges against the Union:

(1) The Union did not properly handle references to old disciplinary records which were raised by CCC during the arbitration hearing.

(2) The Union failed to investigate her grievance thoroughly.

(3) The Union improperly represented her during her arbitration hearing (by, for example, failing to ask any questions of the person at CCC who discharged Gillette, and failing to present material witnesses).

(4) The Union refused to permit her to have her attorney attend the fourth-step grievance meeting and arbitration hearing.

(5) The Union failed to appeal the adverse arbitration award.

These being Gillette's only claims against the Union in the record, they all clearly relate to the Union's representation of her grievance.

Section 301 generally governs suits for violations of contracts between an employer and a labor organization. The Supreme Court has read Section 301 expansively to include suits brought by employees. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 200–01, 83 S.Ct. 267, 270–71, 9 L.Ed.2d 246 (1962). To ensure uniformity in this area of federal law, Section 301 has been held to preempt state law claims that are substantially dependent upon an analysis of a collective bargaining agreement. *See, e.g., Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799–800 (6th Cir.1990). An action for breach of duty of fair representation that directly implicates the grievance provisions of a collective bargaining agreement "clearly falls within the ambit of section 301 preemption." *Id.* at 802. In *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733, 735 (6th Cir.1985), this court stated:

> The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation. Whether union conduct constitutes a breach of fair representation is a question of federal

law.... The fact that an action for failure to fairly represent a member may be brought in a state court ... is beside the point. Regardless of the forum in which the claim is presented, the case is controlled by federal law.

(Citations omitted.) In *Maynard*, this court held that federal law preempted an employee's claim for damages against his union for breach of duty of fair representation, brought pursuant to a provision of Michigan's Handicappers' Act. In doing so, this court agreed with the district court which had held that the Michigan statute created no new rights for an employee and imposed no new duty on the union not already clearly present under existing federal labor law. *Id.; see also Welch v. General Motors Corp.*, 922 F.2d 287, 293–94 (6th Cir.1990).

■ Gillette does not dispute the general preemptive effect of federal law in this area. Rather, she tries to avoid dismissal of her claims against the Union by arguing that she has certain specific state-law claims which do not substantially depend on an interpretation of the collective bargaining agreement for their resolution.

Gillette's amended complaint alleges that the Union did not provide "appropriate representation," and committed "negligent failures." Construing these claims broadly, she asserts that they encompass state-law claims of "negligence/malpractice, fraud/collusion, and tortious interference with a contractual relationship," which may be resolved independently of the collective bargaining agreement.

Gillette's argument is unpersuasive. While it is true that pleadings are to be "construed as to do substantial justice," Fed.R.Civ.P. 8(f), a complaint is supposed to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a). Gillette's amended complaint does not allude to collusion between the Union and CCC, nor to any tortious interference with contractual relations, nor to the Union negligently pursuing any specific state-law claims on behalf of Gillette. Fraud must be pled with particularity, Fed.R.Civ.P. 9(b), and it was

not pled. In a similar vein, this court remarked in *Fox:*

> While state law causes of action for fraud independent of [collective bargaining agreement] rights and duties unquestionably can evade the preemptive reach of section 301, the allegation in this case is a classic example of the "comparatively amorphous [tort] claims in the employment context [that] fall prey to § 301 preemption because they fail to articulate theories clearly independent of collective bargaining agreement rights and obligations."

*Fox*, 914 F.2d at 801–02 (citation omitted).

Gillette's amended complaint does not contain any claims against the Union beyond a breach of duty of fair representation. Additionally, review of the record reveals no support for any claim other than a breach of duty of fair representation. It is notable that Gillette, in her response to the summary judgment motion, wrote: "Based on the above essential facts, the Plaintiff can prove the assault and retaliatory discharge claims against the Company as well as a malpractice claim against the Union." The district court remanded a "malpractice" claim to the state court. Gillette's attempt to squeeze a negligence/fraud/collusion/tortious interference claim out of her amended complaint is creative, but unavailing.

In summary, Gillette's purported state claims against the Union are clearly related to its duty of fair representation. Thus, federal law clearly preempts them and they are clearly time-barred. Consequently, it is clear error for the district court to have remanded the "malpractice" or any other "pendent state claims" against the Union to the state court. This clear error weighs in the Union's favor as this court balances the writ of mandamus factors.

### D. Other Factors

The other factors that may be considered in determining whether a writ of mandamus ought to issue are not present in this case.

## IV. CONCLUSION

Based on the foregoing analysis, we hereby GRANT the Union's petition for writ of mandamus, directing the district court to vacate any portions of its Order that remand claims against the Union to the state court, and to dismiss Gillette's claims against the Union as preempted, and thus time-barred.