**Harry REYNOLDS, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, et al., Defendant.**

**No. 3:95CV7596.**

United States District Court, N.D. Ohio, Western Division.

Nov. 27, 1996.

James A. Hammer, Mitchell, Sterns & Hammer, Bowling Green, OH, for Plaintiff.

Jeffrey Van Hove, United Steelworkers Of America, Office Of Gen. Counsel, Pittsburgh, PA, James B. Robinson, Peter M. Fox, Thomas J. Kircher, Kircher, Robinson, Newman & Welch, Cincinnati, OH, John J. Siciliano, Scott G. Deller, James B. Yates, Fuller & Henry, Toledo, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This action is before the Court on Defendants' motions for summary judgment, Plaintiff's opposition and reply thereto. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Harry Reynolds ("Reynolds") was an employee of Modine Manufacturing Company's ("Company") radiator plant in Pemberville, Ohio. As an hourly employee of the Company Reynolds also joined the United Steelworkers of America and its Local 24 ("Union"). In August 1989, Reynolds attempted to vote on a proposed Collective Bargaining Agreement ("CBA") when he was assaulted by co-workers and suffered injuries. Upon Reynolds' return to work, he was subjected to continued harassment from co-workers culminating in his leave from employment in April 1990. Shortly after he took his leave of employment, Reynolds filed a grievance (No. 4–90) against the Company for failing to

provide him with a safe workplace. This grievance was processed through the third level or step of the grievance procedure and ultimately withdrawn by the Union "without prejudice" to their position and Reynolds was advised via written correspondence that the situation would continue to be monitored.

In July 1991, Reynolds filed a Workers Compensation Claim for the injuries received in the August 1989 assault by co-workers.

On May 7, 1992, Reynolds was discharged by the Company pursuant to Section 5.8 of the CBA as he was not in active service for a twenty-four month period. Reynolds filed another grievance (No. 7–92) alleging wrongful discharge. This second grievance was stayed pending the determination of his workers compensation claim because Reynolds' grievance hinged in part upon the circumstances involving the assault. Reynolds disputed this position and advocated proceeding to arbitration on the grievance despite his pending workers' compensation claim. Ultimately, Reynolds' workers compensation claim was denied and all subsequent appeals were unsuccessful. On November 10, 1994, the Union then advised the Company that given the outcome of the workers' compensation claim, they would not pursue grievance 7–92. Approximately two months later, the Union further advised Reynolds that it was withdrawing grievance 7–92 "without precedent or prejudice."

Reynolds initiated this action in October 1995 and alleged a breach of duty of fair representation against the Union under 29 U.S.C. §§ 151, 158 and 159. Further, Reynolds alleged a breach of contract against the Company under 29 U.S.C. § 185(a). Plaintiff seeks lost wages totalling approximately $100,000.00, costs and attorney fees.

## SUMMARY JUDGMENT STANDARD

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Statute of Limitations.

Under a hybrid § 301/fair representation claim [1], a six months statute of limitations period governs each of the claims. *DelCostello v. Int'l Bhd. Of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). An employee's cause of action "accrues when

---

1. A hybrid § 301 claim comprises two causes of action. One cause of action, brought under § 301, is brought against the employer for breach of the CBA. The second cause of action, against the union, encompasses a claim for breach of the duty of fair representation is intimated under the stratagem of the National Labor Relations Act. *Id.* at 164.

an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. Int'l Brotherhood of Teamsters,* 83 F.3d 747, 757 (6th Cir.1996), *citing Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573 (6th Cir.1987).

■ An employee need not exhaust all internal union procedures "unless the internal union procedures can reactivate the grievance or grant the relief" that would be available in the employee's § 301 suit against both defendants. *Clayton v. Int'l Union, United Automobile, Aerospace & Agric. Implement Workers of America,* 451 U.S. 679, 695, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). For the statute of limitations to be tolled, this Circuit has stated that the "internal union appeal must be able to afford the claimant *some* relief from the defendant." *Robinson v. Central Brass, Mfg. Co.,* 987 F.2d 1235, 1242 (6th Cir.), *cert. denied,* 510 U.S. 827, 114 S.Ct. 92, 126 L.Ed.2d 60 (1993). The Court in *Robinson* refused to set forth any "bright line rules" and instead suggested a case by case determination which considered the factors set forth in *Clayton, supra* and *Frandsen v. Bhd. of Ry., Airline and Steamship Clerks, Freight Handlers, Express and Station Employees,* 782 F.2d 674 (7th Cir.1986)[2].

■ Under *Clayton, supra,* the factors for consideration include:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to

exist, the court may properly excuse the employee's failure to exhaust.

*Id.* 451 U.S. at 698.

The Company asserts that Plaintiff's 4–90 grievance triggered the statute on June 15, 1990, the date on which the Union informed him that it was withdrawing the grievance. Plaintiff argues that the withdrawal of the grievance, without prejudice, as well as the Union's statement that it would "continue to monitor the situation," did not end the grievance. In addition, Plaintiff states that the "agreement" between the Union and Company to withdraw the grievance without prejudice (with continued monitoring) could not have alerted him to the violation, thus, he could not have known that he had six months in which to file his § 301 claim against the Company.

■ While Plaintiff's arguments might be more persuasive against the Union, they do not aid in the case against the Company. Both Plaintiff's deposition testimony and the correspondence sent regarding the withdrawal of the grievance indicate that the Company's position was clear and had not changed since its denial of the grievance at the Step 2 process. Included in the Union's June 1990 correspondence to Plaintiff was a copy of the Company's answer, which stated in part:

> The Company does everything possible to ensure a safe work environment for all employees. We have taken additional safeguards for Harry Reynolds in light of the problems he has encountered. The measures have been successful as no harm has come to Harry Reynolds. As of today's date, there has been no evidence to substantiate the claim of an unsafe work environment.

(Defendant's Exhibit KB.) It is clear from reading the Company's position as stated above that they continued to oppose Plaintiff's claim. Thus, Plaintiff's argument that the Company had entered into "an agree-

---

**2.** The Seventh Circuit in *Frandsen, supra,* analyzed the considerations in *Clayton* differently and found that the statute of limitations were tolled "by the pursuit of internal union remedies, even where those remedies are ultimately determined to have been futile." *Id.* 451 U.S. at 681. The four factors considered by the Seventh Circuit included: (1) avoidance of a tolling rule which contravened a dual federal policy; (2) avoiding a tolling rule which would result in a "flood of cautionary litigation"; (3) emphasizing the district court's discretion on the question of the exhaustion requirement; and (4) that the internal appeals process need not culminate in complete relief to the claimant.

ment" with the Union regarding the withdrawal is unfounded. Moreover, Plaintiff was on notice of the Company's stance on grievance 4–90 as of June, 15, 1990. Because this action was filed some five years later, Plaintiff is precluded from asserting a claim on grievance 4–90 as against the Company.

Plaintiff also argues that grievance 4–90 was subsumed into grievance 7–92. This argument, while hardly persuasive and without any authority, lacks merit. Both grievances are unrelated and involve different portions of the CBA. In addition, grievance 4–90 requests monetary relief, while grievance 7–92 requests reinstatement to employment.

■ The Company also contends that grievance 7–92 is precluded from relief under the six month statute of limitations. There is no dispute that the Company and the Union agreed to hold this grievance in abeyance pending the outcome of the workers' compensation suit. In November 1994, the Union notified Plaintiff that it could not convince the Company to change its position regarding the termination and that the grievance would not be pursued due to a "lack of merit." (Defendant's Exhibit 16.) The Union subsequently notified the Company on December 12, 1994 that it was withdrawing grievance 7–92 "without precedent or prejudice." (Defendant's Exhibit 17.) The Company argues that the November 1994 letter to Plaintiff placed him on notice of the Union's unequivocal position. In addition, Plaintiff argues that his correspondence to the Union, to which there was no response, tolls the statute of limitations given his right to appeal the Union's decision.

The Sixth Circuit addressed a similar situation in *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir.1990). That case involved a hybrid § 301 claim in which the district court's dismissal of the plaintiff's claim as time-barred was affirmed on appeal. The plaintiff in *Fox* was orally advised by the union shop steward that all courses of relief had been exhausted, yet she continued to remain in contact with the union, which contact culminated in written correspondence some six months later, reaffirming their position. The appellate court rejected plaintiff's argument that the correspondence started the clock running on her § 301 claim because "a plaintiff could indefinitely delay resolution

of labor disputes merely by bombarding his union with tiresome requests for needless review." *Id.* at 804 *citing Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 852 (7th Cir.1985).

This Court has reviewed the documents in connection with Plaintiff's discharge, as well as the Union By–Laws and Constitution, and finds Plaintiff's position is unavailing. Plaintiff's interpretation of Article IV, Section 24 of the Union Constitution regarding his right to appeal from a withdrawn grievance, when read with the entire constitution, does not allow for an appeal in this instance. Rather, the Union Constitution only allows for appeals regarding an international election and local union discipline. (*See* Union Constitution, Articles 4, 5, and 13 .) Because Plaintiff is precluded from any relief under the internal union procedures, he cannot demonstrate that he is entitled to *any* relief from the defendant. *Robinson v. Central Brass, Mfg. Co.*, 987 F.2d at 1242. Plaintiff's reliance upon the Seventh Circuit's opinion in the *Frandsen* case does little to support his position, as this Circuit in *Robinson, supra*, disagreed with the Seventh Circuit's conclusion as follows:

> We find the majority of reasoning in *Frandsen* persuasive. However, we part company with the Seventh Circuit on two crucial points. The Seventh Circuit held that "the statute of limitations is tolled by the pursuit of internal union remedies, *even where those remedies are ultimately determined to have been futile.*" *Id.* at 681 (emphasis added). We disagree. First in order for the statute of limitations to be tolled, the internal union appeal must be able to afford the claimant *some* relief from the defendant.

*Id.* at 1242.

In the present case, there were no remedies left for Plaintiff to pursue within the internal union structure. Plaintiff acknowledged this at his deposition. Therefore, left with no remedies, Plaintiff was on notice in November 1994 regarding the Union and Company's position. Because he did not file this suit until some eleven months later, Plaintiff's § 301 claim with regard to the 7–

92 grievance is foreclosed under the six month statute of limitations.

As the Defendant has established that Plaintiff's § 301 claims against the Company are time barred, the Company is entitled to summary judgment on this issue.

The Union also moves for summary judgment on the claim against it based upon the statute of limitations. As set forth above, Plaintiff was clearly aware of the Union's position on either of his grievances as of the end of 1994. Plaintiff's failure to file the instant action until October of 1995, absent evidence which supports tolling the statute of limitations, requires dismissal of the action on this basis alone. *See Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.1985) (Requirements necessary to demonstrate fraudulent concealment by union in order to toll the six month statute of limitations).

### B. Breach of the CBA

■ Alternatively, the Company moves for summary judgment on the merits of Plaintiff's claim that it breached the CBA. The CBA clearly allows for termination of the employment relationship where the employee "is not in active service of the Company for a period exceeding twenty-four (24) months from the date on which he ceased active service." (CBA at Section 5.8(d).) Under the terms of a medical leave, under Section 11.3 of the CBA, the only exception to the 24 month rule is the where there is a workers' compensation case. There is no dispute among the parties that Plaintiff's leave from work began on April 6, 1990. The dispute at issue centers on the nature of the leave.

Defendant relies on the letter submitted by Plaintiff's counsel dated May 7, 1990, which indicates that Plaintiff was unable to return to work upon the recommendation of a psychologist. (Defendant's Exhibit 5.) In June 1990, Plaintiff applied for short term disability benefits and received such benefits for six months. (Driscoll Affidavit at ¶ 6.) Defendant also cites to Plaintiff's 7–92 grievance which notes Section 11.3, the medical leave provision, as a basis for a violation of the CBA. (Plaintiff's Exhibit F.) This evidence aside, the Company asserts that Plaintiff was considered on "inactive" status for a twenty-four month period and he was terminated from his position for that reason.

Plaintiff also asserts that his receipt of vacation pay in 1991 and 1992 is indicative of his "active" status and precludes the Company from classifying him as "inactive." While the CBA does not define the terms "active" or "inactive", the Company avers that it must pay vacation to all employees who remained on the seniority list as of June 1st of a particular year, whether "active" or "inactive," who had gross earnings in the prior calendar year. (Driscoll Affidavit at ¶ 5.) In answers to Plaintiff's interrogatories, the Company identified vacation pay received by Plaintiff for earnings in the prior calendar years of 1989 and 1990. (Plaintiff's Exhibit D.)

In addition, Plaintiff argues that the workers' compensation exclusion works to exclude the period of time during which the employee pursues the claim. Plaintiff provides no support for this proposition and this theory is untenable as it would encourage workers' compensation claims without merit in order to suspend the period of inactivity.

Finally, Plaintiff argues that because he was listed on the seniority roster of "regular" employees he could not be considered to be on "inactive" status. However, the seniority list includes all employees unless and until they are terminated. (Driscoll Affidavit at ¶ 3.)

Upon consideration of all of the evidence presented by both sides and construing the evidence in the light most favorable to the Plaintiff, it is clear that Plaintiff was terminated according to the terms of the CBA.

### C. Breach of Duty of Fair Representation.

■ The Union also moves for summary judgment on this issue and submits that it acted in good faith when determining that Plaintiff's grievance over the discharge was without merit. Plaintiff argues that the Union's failure to consult with him prior to withdrawing the grievance raises a question of fairness. Plaintiff must, however, demonstrate that the conduct was arbitrary, discriminatory, or in bad faith. *See, Black v. Ryder/Pie Nationwide,* 15 F.3d 573, 585 (6th Cir.1994). The fact that the Union did not consult with Plaintiff prior to its withdrawal

of the grievances does not in and of itself constitute evidence of bad faith. The evidence presented clearly indicates that the Union pursued the grievances until it became clear that further pursuit was futile. Without more, Plaintiff's claim must fail. Accordingly, the Union's motion for summary judgment on this issue is granted.

## CONCLUSION

For the reasons stated above, the Company and Union's motions for summary judgment are granted. Case closed.

**IT IS SO ORDERED.**