2008 ME 61

**Kelly WALTON**

v.

**MAINE SCHOOL ADMINISTRATIVE DISTRICT 52 et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 18, 2008.

Decided: March 27, 2008.

Donald F. Fontaine, Esq. (orally), Law Offices of Donald F. Fontaine, Portland, ME, for Kelly Walton.

Kaighn Smith, Jr., Esq. (orally), Melissa H. Hewey, Esq., Drummond Woodsom & MacMahon, Portland, ME, for SAD 52.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

SILVER, J.

[¶ 1] Kelly Walton appeals from a summary judgment entered by the Superior Court (Androscoggin County, *Gorman, J.*) in favor of Maine School Administrative District 52 (SAD 52) on Walton's claim of breach of contract and violation of due process of law as a result of SAD 52's termination of her employment. Walton argues that (1) the arbitration decision that considered Walton's grievance under her Collective Bargaining Agreement does not preclude her claim of breach of her individual contract in state court, and (2) SAD 52 breached the individual employment contract it had with her when it terminated her employment. We affirm the judgment.

## I. FACTS

[¶ 2] Walton is a licensed social worker in Maine with a bachelor's degree. She had been practicing social work in her employment for SAD 52 for seventeen years and, before this dispute, had never been required to have or requested to obtain a master's degree. Until this dispute, her job description for school social worker required only a bachelor's degree.

[¶ 3] Walton and SAD 52 agreed to a continuing contract in 1988, under which Walton worked for SAD 52 as a school social worker. She did not teach. Under this contract, Walton could be terminated only "for cause as provided by statute." SAD 52 renewed this contract annually knowing that Walton had only a bachelor's degree. The contract was last renewed on September 1, 2005.

[¶ 4] Walton was also covered under the Collective Bargaining Agreement between SAD 52 and the Tri–Town Teachers' Association. Under the Agreement, "[c]ontinuing contract teachers shall not be dismissed or suffer non-renewal of contract without just cause." Under the Agreement, a grievance can be filed by a teacher whenever "a violation of this contract is claimed to have occurred." A "grievance" refers to a complaint by an employee or by the Association that "a violation of the contract has occurred."

[¶ 5] In 1998, the Maine Medical Assistance Manual, which regulates the provision of school-based rehabilitative services, was amended to require school social workers to possess master's degrees as a condition of that school's receiving Medicaid funds. SAD 52 learned of this requirement in November 2005 and immediately gave Walton a ninety-day notice of termination of her contract. Ninety days later, Walton was terminated. This termination took place five months into her 2005–2006 contract.

[¶ 6] Walton invoked the grievance provisions of the Agreement. At arbitration, the arbitrator found that SAD 52 had the right to terminate Walton's individual contract. While pursuing her grievance pursuant to the Agreement, Walton also filed a complaint in Superior Court, claiming breach of her individual contract and violation of due process of law. Following the arbitrator's decision, the Superior Court found that the arbitration decision had a preclusive effect on Walton's claim of breach of contract. The court also granted SAD 52's motion for summary judgment on the same claim. Walton's appeal followed.

## II. DISCUSSION

[¶ 7] We have held that "[a] binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them." *Me. Mortgage Co. v.*

*Tonge,* 448 A.2d 899, 902 (Me.1982); *see Aguilera v. Pirelli Armstrong Tire Corp.,* 223 F.3d 1010, 1015 (9th Cir.2000) (stating that "where [a] position in dispute is covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted") (quotation marks omitted) (second alteration in original); *see also Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 801 (6th Cir.1990) (stating that "employees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims").[1] The Agreement was executed after Walton's individual contract, and it contains provisions for the termination of employees such as Walton. The Agreement granted arbitration rights to Walton for her termination. Thus, any ability Walton may have had under her individual contract to seek redress in state court for her termination was discharged as a result of the Agreement's execution.[2] The Superior Court therefore did not err as a matter of law in finding that the arbitrator's decision had preclusive effect over Walton's claim of breach of contract or in granting summary judgment in SAD 52's favor. *See Cloutier, Barrett, Cloutier & Conley, P.A. v. Wax,* 604 A.2d 42, 43–44 (Me.1992).

The entry is:

Judgment affirmed.

---

1. Although it was not an argument presented to us or, apparently, to the Superior Court, Article 28(C) of the Agreement reads: "When individual contracts with unit employees contain language inconsistent with express language contained in this agreement, the controlling instrument will be this agreement." Both the Agreement and Walton's individual contract provided inconsistent language concerning the proper method for terminating Walton. The Agreement therefore explicitly controls the issue.

2. Because Walton elected to have her termination arbitrated, she does not now get a second bite at the apple in state court. We do not hold today, however, that Walton would not have had the right to forego arbitration and proceed initially to state court. This issue is not before us, and we do not address it.