**Thomas R. ZIMMER and Suzanne K. Zimmer, Plaintiffs**

v.

**AMERICAN TELEPHONE & TELEGRAPH COMPANY OF MICHIGAN; Michigan Bell Telephone Company; Communications Workers of America, National; and Communications Workers of America Local 4009, Defendants.**

**Civil No. 94–70909.**

United States District Court, E.D. Michigan, Southern Division.

Aug. 30, 1994.

David M. Belanger and Terence G. Hoerman, Ferriby & Houston, Clinton Township, Michigan, for Plaintiffs.

Anthony A. Haisch and John M. Boyda, Haisch & Boyda, Detroit, Michigan, for AT & T.

J. Kent Cooper and Albert Calille, Ameritech, Detroit, Michigan, for Michigan Bell.

Stuart M. Israel, Miller, Cohen, Southfield, Michigan, and Gerald C. Boyle and Boyle, Tyburski, Washington, D.C., for Communications Workers.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is an action against Thomas Zimmer's (Zimmer) employer and union based on the employer's failure to recall Zimmer after a reduction in workforce and the union's alleged failure adequately to represent Zimmer. Plaintiffs, Zimmer and his wife, Suzanne Zimmer, filed this action on February 1, 1994, asserting twelve state law claims against Zimmer's employers, American Telephone and Telegraph (AT & T)[1] and Michigan Bell Telephone Company (Michigan Bell) (collectively, the employers), and against Zimmer's union, Communications Workers of America, National, and Communication Workers of America Local 4009 (collectively, the Union). Now before the Court are motions to dismiss or for summary judgment brought by the Union, AT & T, and Michigan Bell. For the reasons that follow, the motions will be granted and the case will be dismissed.

### II.

Zimmer was hired by Michigan Bell as an hourly employee in June, 1973, and worked for Michigan Bell until 1983. As a consequence of the reorganization of the Bell Operating System (the divestiture order) in 1983, Zimmer was given the choice of working for AT & T or Michigan Bell, and elected to work for AT & T. Throughout the course of his employment with Michigan Bell and AT & T, Zimmer was a member of the Union.

Zimmer worked for AT & T until September, 1989, when he was laid off as part of a work-force reduction. Under the divestiture order, Zimmer had recall rights from both AT & T and Michigan Bell. Under the collective bargaining agreement between AT & T and the Union, Zimmer could be recalled on a seniority basis for three years from the time of his layoff. Under the collective bargaining agreement between the Union and Michigan Bell, Zimmer could be recalled on a seniority basis for two years from the time of his layoff.[2]

In order to be recalled to either AT & T or Michigan Bell, Zimmer had to complete a recall interest form and return it to AT & T. Upon his termination from AT & T, Zimmer was given a "termination packet" that included a recall interest form. Zimmer claims to have completed and submitted the forms in termination packet, but AT & T has no record of ever receiving a recall interest form from Zimmer. Michigan Bell did not give Zimmer a separate termination packet.

In September, 1991, Zimmer discovered that other former employees with less seniority than he had been recalled by Michigan Bell, although he had not. Zimmer was later informed in a letter from Michigan Bell dated June 29, 1992,[3] that he was not included on Michigan Bell's recall list because he had not completed and forwarded the recall interest form included in his termination packet from AT & T.

After learning that other less senior employees had been recalled by Michigan Bell, Zimmer visited Domonic Guadigni (Guadigni), the president of his local union chapter. Guadigni called Michigan Bell on Zimmer's behalf during this visit. In February, 1993,

---

**1.** The complaint erroneously names American Telephone and Telegraph Company of Michigan as Zimmer's employer; the actual employer was American Telephone and Telegraph, a New York corporation. Plaintiffs intend to amend the complaint to add AT & T as a defendant.

**2.** The record does not contain copies of the collective bargaining agreements.

**3.** The record does not contain a copy of this letter.

Zimmer requested that the Union file a grievance on his behalf. The Union investigated Zimmer's claim and decided not to pursue it. On June 23, 1993, a Union representative wrote Zimmer a letter saying that the Union had investigated his complaint and found that AT & T had no record of Zimmer's ever completing a recall interest form, and concluding that "there is nothing else the Communication Workers of America can do on your behalf." The letter was sent via certified mail, and Zimmer signed for and received the letter on June 25, 1993. The Union never filed a grievance.

On July 28, 1993, Zimmer sent a letter by certified mail to the Union representative, requesting information regarding the status of a "grievance [he] had filed with [the Union] just prior to [his] termination," and information regarding other AT & T employees laid off in 1989. The Union never responded to Zimmer's letter.

Zimmer and his wife, Suzanne Zimmer, filed this action of February 1, 1994, in Wayne County Circuit Court. The case was removed to this Court on March 9, 1994, on the basis of federal question jurisdiction under § 301 of the Labor–Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; 28 U.S.C. § 1331.

### III.

The complaint alleges twelve counts, all premised on state law rather than the LMRA:

I    Breach of duty to exercise reasonable care in the processing of Zimmer's termination packet by AT & T.

II    Breach of duty to exercise reasonable care in the processing of Zimmer's termination packet by Michigan Bell.

III    Breach of duty to exercise reasonable care in overseeing the processing of Zimmer's termination packet by the Union.

IV    Breach of an employment contract between Zimmer and AT & T premised on AT & T's failure to recall Zimmer.

V    Breach of an employment contract between Zimmer and Michigan Bell premised on Michigan Bell's failure to recall Zimmer.

VI    Breach of Zimmer's "employment contract which incorporated the terms of the collective bargaining agreement between [the Union] and AT & T and Michigan Bell" by the Union in failing to oversee the processing of Zimmer's recall interest form and failing fairly to represent Zimmer in the dispute over his recall.[4]

VII    Intentional infliction of emotional distress against AT & T.

VIII    Intentional infliction of emotion distress against Michigan Bell.

IX    Intentional infliction of emotional distress against the Union.

X    Loss of consortium against AT & T.

XI    Loss of consortium against Michigan Bell.

XII    Loss of consortium against the Union.

### IV.

Each defendant has filed its own motion to dismiss or for summary judgment. The gist of all three motions is the same: that plaintiffs' claims are all preempted by § 301 of the LMRA (§ 301), 29 U.S.C. § 185, because they necessarily implicate the terms of the collective bargaining agreements between the Union and AT & T and between the Union and Michigan Bell, and that plaintiffs did not meet the six-month statute of limitations for bringing a claim under § 301. Zimmer responds that his claims sound in common law negligence and breach of contract and are based on the defendants' breach of a "duty of reasonable care in securing and maintaining" Zimmer's recall interest form. Zimmer says the defendants breached that duty by losing his recall interest form, and that his claims relating to that breach of duty do not require an interpretation of the terms

4. This Count is erroneously numbered "IV" in the complaint.

**306**

of the collective bargaining agreements and therefore are not preempted by the LMRA. Alternatively, he argues, even if the claims are preempted by the LMRA, the six month statute of limitations has not yet run, because he continued to pursue internal union remedies until August 30, 1993, "when he began seeking relief in the court systems."

### A.

Each of the defendants argues that the counts against it are preempted by the LMRA. Section 301 of the LMRA, 29 U.S.C. § 185, states that:

> (a) Suits for violation of contract between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties.

The Supreme Court has interpreted this language to require federal preemption of state law-based actions when resolution of the state law claim depends on the meaning of a collective bargaining agreement, *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–104, 82 S.Ct. 571, 576–578, 7 L.Ed.2d 593 (1962), or "is inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Any state law claim will be preempted by § 301 if the claim is "substantially dependent on analysis of a collective bargaining agreement." *Adkins v. General Motors Corp.*, 946 F.2d 1201, 1205 (6th Cir.1991) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)). Labor contract disputes are therefore preempted by § 301,

> whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Id.* at 211, 105 S.Ct. at 1911. The preemptive force of § 301 is extremely broad:

> [T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983).

### B.

■ Counts I and II charge that AT & T and Michigan Bell negligently, intentionally, or recklessly failed properly to process Zimmer's recall interest form, and failed to take steps to remedy the mistake after it was brought to their attention. Count III charges that the Union negligently, intentionally, or recklessly failed to oversee the processing of the recall interest form, and failed to take steps to remedy the problem regarding the form after being notified that the form had been misplaced. These three counts are styled as tort claims, alleging breach of a duty of care concerning the processing of Zimmer's recall interest form.

Plaintiffs argue that the first three counts are not preempted by § 301 because "[t]he Collective Bargaining Agreement does not address whether or not Defendant is required to exercise reasonable care in maintaining such a form." Counts I and II specifically allege that the employers were under a duty pursuant to a collective bargaining agreement with the Union to present Zimmer with "a complete termination packet," included in which was the recall interest form serving as the basis for Zimmer's claims. Count III similarly alleges that "pursuant to a collective bargaining agreement" the Union had a duty to "assure a complete termination packet was presented to" Zimmer.

A determination of whether the parties indeed were under the duties described in the Counts I, II, and III and the scope of those duties "is substantially dependent upon analysis of the terms of an agreement between the parties in a labor contract," *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916. Plaintiffs attempt to fashion these counts into

a common law claim, but there would be no duties at all regarding the recall interest form if the collective bargaining agreements did not in fact mandate that AT & T and Michigan Bell supply Zimmer with such a form and then process the form, and that the Union supervise the processing of the form. Plaintiffs cite no common law authority that would create such duties apart from the collective bargaining agreements, and the Court is not aware of any. Counts I, II, and III are therefore preempted by § 301 of the LMRA "because the underlying dut[ies] arise[ ] directly from" the collective bargaining agreements. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 801 (6th Cir.1990).

### C.

Counts IV, V, and VI are styled as breach of individual employment contract claims. Counts IV and V allege that pursuant to an employment contract between [the employers] and Plaintiff which incorporated the terms of the collective bargaining agreement between [the employers] and [the Union], the employers were under the duty to present Zimmer with a complete termination packet upon his termination, and properly to process the recall interest form from the termination packet. Count VI alleges that "pursuant to Plaintiff's employment contract which incorporated the terms of the collective bargaining agreement between [the Union] and [the employers]," the Union was under contractual duties to insure that the employers presented Zimmer with a complete termination packet and to oversee the

processing of Zimmer's recall interest form and Zimmer's recall based on seniority.

Plaintiffs argue that these counts are "based on separate and distinct" contracts between the employers and Zimmer, creating rights and duties "separate from those created under the Collective Bargaining Agreement."[5] Plaintiffs' papers are vague on this point, and never explain how Zimmer allegedly came to enter into individual contracts with his employers while he was covered by a collective bargaining agreement. Although plaintiffs repeatedly assert that the rights created by the "separate and distinct" contracts between the employers and Zimmer are "different" from arising out of the collective bargaining agreement, plaintiffs never articulate what the "different" rights are, or how they differ from those arising under the collective bargaining agreement.

Despite plaintiffs' assertion that Zimmer entered "separate and distinct" contracts with the employers, by the allegations in his own complaint the separate contracts "incorporated the terms of the collective bargaining agreement." Thus, even if Zimmer did enter into individual contracts with the employers, the claims based on those contracts "rely upon the collective agreement indirectly," and "address the relationship between the individual contracts and the collective agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987).[6] Such claims, which are "inextricably intertwined with consideration of the terms of the labor contract[s]" between the Union and the employers, are preempted by § 301.[7]

---

**5.** The record does not contain copies of the "separate and distinct" employment contracts, or the collective bargaining agreement. It is also unclear from the current state of the record if there is one collective bargaining agreement between the Union and the employers or two separate collective bargaining agreements.

**6.** It is unlikely that plaintiffs could establish that Zimmer had rights under individual employment contracts with his employers because he was covered by the collective bargaining agreements while working for the employers. The Sixth Circuit has held that "employees covered by a CBA [collective bargaining agreement] cannot rely upon the existence of a separate, individual employment giving rise to state law claims." *Fox*, 914 F.2d at 801.

**7.** Count VI, against the Union, alleges acts on the part of the Union that purportedly breached of Zimmer's separate contracts with the employers, such as "failing to pursue a grievance against AT & T and Michigan Bell," which in substance constitute a claim that the Union breached its duty of fair representation of Zimmer. The Sixth Circuit has held that "an action for the breach of the duty of fair representation that directly implicates the grievance provisions of a collective bargaining agreement 'clearly falls within the ambit of section 301 preemption.'" *In re Glass Workers, Local No. 173*, 983 F.2d 725, 728 (6th Cir.1993).

### D.

■ In Counts VII, VIII, and IX, plaintiffs allege that the defendants engaged in "outrageous conduct" with regard to Zimmer, and that the outrageous conduct caused "serious and sever[e]" emotional distress. Specifically, plaintiffs allege that the employers' failure properly to process Zimmer's recall interest form and to recall Zimmer "pursuant to an employment agreement and collective bargaining agreement" entitles plaintiffs to recover damages for intentional infliction of emotional distress from the employers. Plaintiffs also allege that the Union's failure properly to represent Zimmer concerning the recall interest form and "to assure the recall of [Zimmer] pursuant to an employment agreement and collective bargaining agreement" constituted outrageous conduct entitling plaintiffs to recover damages for intentional infliction of emotion distress from the Union.

■ Under Michigan law, damages for the intentional infliction of emotional distress can only be recovered if:

> the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.

*Meek v. Michigan Bell Tel. Co.*, 193 Mich. App. 340, 346, 483 N.W.2d 407 (1991) (citations omitted). It is doubtful that a failure properly to process or oversee the processing of a recall interest form, or to recall or supervise the recall of an employee under the terms of a collective bargaining agreement, would often meet the Michigan standard for recovery of damages for intentional infliction of emotional distress.

Here, it is clear that any duty to process a recall interest form, or to supervise the process of such a form arose, if at all, pursuant to a collective bargaining agreement. Absent such a duty, improper processing of the form could not conceivably form the basis of a claim for intentional infliction of emotional distress. And the complaint specifies that the duty to recall arose under "an employment agreement and *collective bargaining agreement*" (emphasis added). Thus Counts VII, VIII, and IX, like those before them,

unavoidably involve reference to the terms of the collective bargaining agreements, and therefore are preempted by § 301.

### E.

■ Counts X, XI, and XII are claims for loss of consortium. Under Michigan law, recovery on a claim for loss of consortium is contingent on the injured spouse's recovery of damages for the alleged underlying injury. *Berryman v. K Mart Corp.*, 193 Mich.App. 88, 94, 483 N.W.2d 642 (1992). Because Counts I through IX are preempted by § 301 and will be dismissed, neither plaintiff will recover damages for the underlying claims and therefore neither plaintiff can maintain an action for loss of consortium.

### F.

An action asserting claims against an employer for breach of a collective bargaining agreement and against a union for breach of the duty of fair representation is known as a hybrid § 301/fair representation action. Under *DelCostello v. Intn'l Brotherhood of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983), the statute of limitations for a hybrid § 301/fair representation claim is the six month period established in § 10(b) of the LMRA, 29 U.S.C. § 160(b). Because plaintiffs' state law claims (other than the loss of consortium claims) are preempted by § 301 and are in substance a hybrid § 301/fair representation claim, the six month period of limitations applies here.

■ The parties disagree as to how the six month period of limitations should be applied here. The period begins to run when the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Adkins v. Intn'l Union of Elec., Radio, and Machine Workers*, 769 F.2d 330, 335 (6th Cir.1985). A union's alerting a plaintiff that it will not pursue a grievance provides plaintiff with knowledge of acts constituting the alleged unfair representation violation, and thus triggers the period of limitations. *Jones v. General Motors Corp.*, 939 F.2d 380, 384 (6th Cir.1991).

■ Defendants all argue that the statute of limitations began to run when Zimmer received the letter from the Union stating that "[t]here is nothing else the [Union] can do for you." The letter was dated June 23, 1993, and sent via certified mail. Zimmer signed for and received the letter on June 25, 1993.

Plaintiffs argue that the letter did not trigger the period of limitations because it did not unequivocally state that further internal appeals were futile, and because it was written by a union representative whose authority was questionable. Plaintiffs say that Zimmer continued in good faith to pursue internal union remedies until August 30, 1993, and that the statute should not begin to run until that date. Alternatively, plaintiffs argue that because they seek equitable relief—"reinstatement and seniority rights"—the statute of limitations should not apply to their action.

While the June 23, 1993, letter is not as explicit as it might be, it should have served to alert Zimmer that the Union did not intend to pursue his grievance. The June 23, 1993, letter specifically refers to a letter Zimmer had written to his union representative dated May 27, 1993. In the May 27, 1993, letter, Zimmer asked "[w]ill the [Union] file a grievance against AT & T and Michigan Bell on my behalf, followed by arbitration if necessary?" The response of the Union representative in the June 23, 1993, letter was "[t]here is nothing else the [Union] can do on your behalf." The Union's response, read in conjunction with Zimmer's letter of May 27, 1993, indicates that the Union did not intend to pursue Zimmer's case, and, specifically, was not going to file a grievance on Zimmer's behalf.

The only evidence offered by plaintiffs to the effect that Zimmer continued to pursue internal union remedies after receiving the June 23, 1993, letter is a letter Zimmer wrote to his union representative on July 28, 1993. The July 28, 1993, letter requested information regarding employees laid off and recalled by Michigan Bell, and "all documentation concerning a grievance [he] had filed with the [Union] just prior to [his] termination." On its face, it is not at all clear that the grievance referred to in the July 28 letter concerns the subject matter of this suit. The letter refers to a grievance filed *prior* to Zimmer's termination; the actions complained of here, concerning Zimmer's recall and the processing of his recall interest form necessarily took place *after* his termination and could not possibly be the subject of a grievance filed prior to termination.

Furthermore, the Union points out that Zimmer never invoked the Union's internal appeals procedure. The Union's Constitution sets out the procedures for the internal appeals process. The Union Constitution states that:

> [t]he purpose of these appeal procedures is to provide reasonable regulations for the consideration and review of complaints of members regarding actions of the Union or Local, or Union or Local Officers or governing bodies, which are alleged to be in violation of the Union Constitution, Local Bylaws, rights and privileges of members.

Under these procedures, a Union member may make a complaint against the Union by filed a written complaint with the President of the Union within sixty days of the time the member became aware of the alleged violation. CWA Constitution, April 1992, Internal Appeals, § II.A.

Here, if Zimmer wished to challenge the Union's decision not to represent in a grievance regarding the subject matter of this suit, he should have filed a written complaint with the president of the Union within sixty days of his receipt of the June 23 letter stating that "[t]here is nothing else the [Union] can do for you." Zimmer has not submitted any evidence that he filed such a complaint, and the president of the Union, Morton Bahr (Bahr), says in his affidavit that Union records indicate that Zimmer never filed a complaint challenging the decision not to pursue his claim.

■ Zimmer claims in his brief opposing the Union's motion to dismiss or for summary judgment that sometime after writing his letter of July 28, 1993, and before August 30, 1993, he attempted to contact Bahr and his union representative by telephone to request arbitration of his dispute. The record

contains no documentation of any such telephone calls. Even if Zimmer did attempt to make the telephone calls, the attempt would not comply with the Union procedures for internal appeals. Simply placing telephone calls or making other contacts with Union officials, such as Zimmer's letter of July 28, 1993, while ignoring the Union's appeals procedures, will not serve to toll the statute of limitations. "Otherwise, a plaintiff could indefinitely delay resolution of labor disputes merely by bombarding his union with tiresome requests for needless review." *Dozier v. Trans World Airlines, Inc.,* 760 F.2d 849, 852 (7th Cir.1985).

Because Zimmer did not pursue the internal appeal process outlined in the Union Constitution after receiving the June 23, 1993, letter, the six month period of limitations was triggered by the letter, which informed Zimmer that the Union would not pursue his claim. Because Zimmer did not file this action until February 1, 1994, it is barred by the six month period of limitations for a hybrid § 301/fair representation claim.[8]

 Plaintiffs finally argue that the six month period of limitations for a hybrid § 301/fair representation claim should not be applied here because they seek "equitable relief": reinstatement and seniority rights. In support of this argument, plaintiffs offer the truism that "equity eschews mechanical rules." *Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892), and cites cases to the effect that:

> from the beginning, equity, in the absence of any statute of limitations made applicable to equity suits, has provided its own rule of limitations through the doctrine of laches.

*Russell v. Todd,* 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754 (1940).

The instant case does not present an equity suit to which no statute of limitations has been made applicable. The Supreme Court, in *DelCostello,* explicitly held that the six

month period of limitations from § 10(b) of the LMRA, 29 U.S.C. 160(b). *DelCostello,* 462 U.S. at 169, 103 S.Ct. at 2293. That plaintiffs seek injunctive relief in addition to monetary damages does not transform their claim into a suit at equity to which no statute of limitations applies. The LMRA clearly contemplates the granting of injunctive relief and the sixth month period of limitations it provides was designed with the possibility of injunctive relief in mind. Plaintiffs have not demonstrated any reason why the sixth month period of limitation should not apply here.[9]

### V.

For the reasons stated, the motions of AT & T, Michigan Bell, and the Union are GRANTED, and the case is DISMISSED.

SO ORDERED.

---

8. A hybrid § 301/fair representation claim must fail against the employer if it fails against the union. *See DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291.

9. Plaintiffs assert that AT & T "fraudulently concealed the fact that [Zimmer's] recall interest form was not contained in his personal [sic] file." Plaintiffs admit, though, that Zimmer received a copy of his file in 1992, well before the period of limitations began to run on June 25, 1993.